**Lester ADAMS, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Lester ADAMS, Plaintiff–counter-defendant–Appellee,**

**Jean D. Adams, individually and as Trustees of the 1984 Living Trust, Plaintiff–counter–defendant–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**Nos. 91–16762, 91–16840.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1993.

Decided Aug. 31, 1993.

Daniel Markoff, Markoff & York, Las Vegas, NV, for plaintiffs-counter-defendants-appellants-cross-appellees.

Peter A. Appel, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for defendants-counter-plaintiffs-appellees-cross-appellants.

Before: FAIRCHILD,* BEEZER, and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Lester and Jean Adams own two noncontiguous tracts of land in Nevada surrounded by the Toiyabe National Forest. The Adamses brought this action against the United States Forest Service for quiet title to certain land they claimed was erroneously surveyed, an easement for ingress and egress to their land pursuant to the former provisions of Revised Statute 2477, 43 U.S.C. § 932 (1970), and an easement to transport water between the two parcels of land. The United States counterclaimed, asserting that the Adamses had trespassed on National Forest land. The United States sought an injunction and damages for the trespass.

The district court held that the statute of limitations barred the Adamses' quiet title claim. *Adams v. United States,* 687 F.Supp. 1479, 1488 (D.Nev.1988). It also determined that the Adamses had no right to maintain an easement over the Forest Service road to their land, enjoined the Adamses from using and maintaining the easement without prior approval, and held that the Adamses owed the United States $11,000 for damage to the National Forest. The court also held that the Adamses had an easement to transport water between the two parcels. The Adamses moved for relief from judgment under Fed.R.Civ.P. 60(b); District Judge George denied the motion. Both the Adamses and the United States appeal from the judgment. We affirm in part, reverse in part, vacate the damages award, and remand for further consideration.

I

The claims of the landowners and responses of the government raise almost exclusively questions of fact. The district court considered the history of land use, water use, and land surveys in and around the private land for the last 100 years. Two district judges ruled on separate claims in this action; both made detailed, written findings of fact.

The land in question lies in southern Nevada. The land consists of two tracts, one made up of three parcels, the other a separate parcel. Both tracts are completely surrounded by the Toiyabe National Forest.

The land lies near Clark Canyon. The Clark Canyon Road (Forest Service Road 20071) leads through the National Forest from the west to the Adamses' larger tract. The road continues on National Forest land between the two parcels to the western edge of the Adamses' separate, smaller tract.

The other road in question is referred to as the North Canyon Road, although it seems to be little more than a trail. This road veers off Clark Canyon Road approximately 1.5 miles west of the Adamses' larger tract's western boundary. The Adamses have built a switchback on Forest Service land leading from North Canyon Road to their property. This is called the North Canyon Switchback.

---

* The Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

The Adamses constructed a "fuel break" road (presumably for fire prevention) on Forest Service land along the southern boundary of the larger tract.

There are at least two water sources on the Adamses' land. The Culinary or Mill Spring percolates on the larger tract of land. The spring with a greater water flow, the Clark Canyon Spring, lies on the smaller tract of land. The United States' appeal focuses on the Clark Canyon Spring.

The United States acquired this land in 1848 after the Mexican–American War. The United States owned the land until 1892 when it transferred it to Nevada. During the next seven years, Nevada transferred the property to various private owners. The United States retained ownership in the land surrounding the property. On November 5, 1906, President Theodore Roosevelt reserved the surrounding land for what is now called the Toiyabe National Forest.

The Adamses purchased the property in 1964. At the time, Clark Canyon Road was impassable; the Adamses accessed their land on the North Canyon Road. The Adamses have built a house and seven out-buildings on the land; they have also developed a 45 acre irrigated horse pasture.

Township 19 South was originally surveyed in 1881 by Deputy Surveyor Theodore Binge. The much maligned Binge was apparently no perfectionist. Binge did not accurately reflect the survey he ran on the plat map; the original survey "must be considered as of a fradulent [sic] and fictitious character." Letter from Carl S. Swanholm, United States Cadastral Engineer, United States Dep't of Interior, General Land Office, Public Survey Office, to G.D.D. Kirkpatrick, District Cadastral Engineer (May 13, 1936). The resurvey of the land was accepted by the General Land Office in 1939. In 1990, the government performed a resurvey of only a portion of the Adamses' larger tract. The resurvey placed the Adamses' western boundary several hundred feet west of the presumed location, increasing the size of their tract by at least 25 acres.

The district court found that a sawmill existed on the Adamses' land between 1876 and 1881. On the plat map of the 1881 survey, Binge indicated a road leading to this sawmill. The road fell out of use and was not regularly maintained; however, the road is probably the present Clark Canyon Road.

The district court found appropriation of water from the Clark Canyon Spring for the sawmill. The United States disputes whether the sawmill ever appropriated any water. Water is not mentioned in the chain of title between the original patentees and John Spann, the Adamses' immediate predecessor in interest. In the deed between Spann and the Adamses, Spann purported to "convey all water rights appurtenant to" the two parcels.

The Adamses purchased the property based on a map that was based on the 1939 survey boundaries. Since 1964, the Adamses have widened and graded Clark Canyon Road and built the North Canyon Switchback. The Adamses' fuel break road ventures onto Forest Service land.

In 1965, the Adamses built a pipeline from Clark Canyon Spring (on the smaller tract) to the larger tract. The Adamses applied for vested water rights in 1968; they represented that the water had been used for irrigation each and every year since appropriation and that the water was used continuously for sawmill purposes but that the present owner discontinued the mill. The state did not accept the application. The Adamses later applied for a certificate of appropriation for the Clark Canyon Spring from the Nevada State Engineer. This certificate was granted with December 7, 1976 as the date of priority. In 1980, the Adamses installed a second pipeline; the two water lines do not follow the same course.

It is undisputed that the Adamses have never obtained authorization for the activities on Forest Service land. It appears from the record that the Adamses and the Forest Service have had misunderstandings over the road and Forest Service land since 1969. In 1986, the Adamses filed the underlying complaint in this case.

Both parties moved for summary judgment on all claims. District Judge Pro held that the Adamses' quiet title action for land based on the 1881 survey was barred by the statute

of limitations. The court denied summary judgment for either side on the easement and waterline issues.

After a bench trial, District Judge George found that whatever historic road existed in the Clark Canyon area no longer existed. This meant the Adamses were not entitled to a Revised Statute 2477 easement. The court ordered the Adamses to obtain the appropriate permits and comply with governmental conditions before using the Forest Service road. The court also found that most of the work done on Forest Service land were acts of trespass. The court enjoined the Adamses from "further use or occupancy of National Forest lands without first obtaining prior approval" and set a further trial date to determine damages.

The court found that the Adamses had a vested water right under Nevada law and therefore had an easement to transport water across the Forest Service land. In the damages portion of the action, the district court made additional findings of fact and awarded the Forest Service $11,000 in damages. The Adamses and the Forest Service appeal the district court's decisions adverse to each.

## II

We review issues of fact for clear error; we review issues of law *de novo. United States v. City of Spokane,* 918 F.2d 84, 86 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2888, 115 L.Ed.2d 1053 (1991). We review the district court's denial of relief under Fed.R.Civ.P. 60(b) for abuse of discretion. *Northern Alaska Envtl. Center v. Lujan,* 961 F.2d 886, 889 (9th Cir.1992).

### A. *Access*

The Adamses have three separate arguments in support of their easement claim. They claim they are entitled to a right-of-way (1) under Revised Statute 2477, (2) under the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3101 *et seq.,* and (3) under the common law doctrine of easement by necessity. Their claims under the Alaska National Interest Lands Conservation Act

and the common law are raised for the first time on appeal.

The government argues that all three of these justifications for an easement fail for the same reason. From the government's perspective, the Adamses do not need an easement because they already have access to their land over the Forest Service road. The government claims that the Forest Service road is analogous to any public road in any county, town, or city. While this claim has appeal, it is clear that the Forest Service road is *not* like any other public road. The Adamses point to instances when the road has not been maintained; snow removal may not be regularly provided; and the Forest Service does not have the same obligations to the public as a county, town, or city. The Adamses need a recognized easement, if they deserve one, to ensure that their land is accessible at all times over the Forest Service road.

■ It is important to note at the start the difference in this case before and after the district court issued its injunction. When the Adamses first brought this action, they wanted a recognized easement in order to maintain the road without Forest Service approval or notification. The Forest Service had not denied the Adamses access to their land; however, the injunction issued by the district court did. It states that they are "hereby permanently enjoined from further *use or occupancy* of National Forest lands without first obtaining prior approval from the appropriate federal agency." This injunction is far too broad. Even before addressing the easement question, we note that Clark Canyon Road is open to the public, including the Adamses, without a permit. 36 C.F.R. 212.-8(b), 251.50(d). The district court should not have enjoined their "use" of the road.

#### 1. *Revised Statute 2477*

■ Revised Statute 2477 ("R.S. 2477") once provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932 (1970), *repealed by* Federal Land Policy Management Act, Pub.L. No. 94–579, § 706(a), 90 Stat. 2743,

2793 (1976). The act repealing R.S. 2477 preserved any rights-of-way that had existed prior to the date of enactment. 43 U.S.C. § 1769(a). To establish an easement, the Adamses must show that the road in question was built before the surrounding land lost its public character in 1906. *Humbolt County v. United States*, 684 F.2d 1276, 1281 (9th Cir.1982).

■ "Any doubt as to the scope of the grant under R.S. 2477 must be resolved in favor of the government." *United States v. Gates of the Mountains Lakeshore Homes*, 732 F.2d 1411, 1413 (9th Cir.1984). The only colorable claim under R.S. 2477 is an easement over the Clark Canyon Road. The other roads mentioned in this appeal were all constructed after 1906, after the federal lands surrounding the property were reserved for public uses.

The district court held that "credible testimony indicates that whatever road existed in 1881, the Clark Canyon Road is no longer in the same location as that historical road. The modern road was built in the 1960's." The district court found that the Clark Canyon Road as it exists today came into existence after 1906. Consequently, the district court denied the Adamses an easement over the road pursuant to R.S. § 2477. Under the clearly erroneous standard, we affirm this factual determination by the district court.[1]

2. *Alaska National Interest Lands Conservation Act*

■ The Adamses contend that the Forest Service must grant them an easement under the Alaska National Interest Lands Conservation Act. The relevant language, § 3210(a), provides:

Notwithstanding any other provision of law and subject to such terms and conditions as the Secretary of Agriculture may pre-scribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.[2]

Despite its name, the provisions of the Alaska National Interest Lands Conservation Act apply outside of Alaska. *Montana Wilderness Ass'n v. United States*, 655 F.2d 951, 957 (9th Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

Congress intended that "such owners had the right of access to their lands subject to reasonable regulation by ... the Secretary of Agriculture in the case of national forest ... under the Federal Land Policy and Management Act of 1976." 1980 U.S.Code & Admin.News 5070 at 5254. While mandating reasonable access, the statute directs the owners of the private land to "comply with the rules and regulations applicable to ingress and egress to and from the National Forest System." 16 U.S.C. § 3210(a).

The Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701 *et seq.*, provides the Secretary with the authority "to grant, issue, or renew rights of way over [Forest Service lands] for ... roads, trails [and] highways." 43 U.S.C. § 1761(a). It also provides:

Rights-of-way shall be granted, issued, or renewed pursuant to this subchapter under such regulations or stipulations, consistent with the provisions of the subchapter or any other applicable law, and shall also be subject to such terms and conditions as the Secretary concerned may prescribe regarding extent, duration, survey, location, construction, maintenance, transfer or assignment, and termination.

---

1. Even if the Adamses had an easement under R.S. 2477, they would still be subject to reasonable Forest Service regulations. *United States v. Vogler*, 859 F.2d 638, 642 (9th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989).

2. The Secretary has promulgated regulations governing access under the Alaska National Interest Lands Conservation Act. *See* 56 Fed.Reg. 27410 (June 14, 1991), 36 C.F.R. Part 251, Subpart D.

43 U.S.C. § 1764(c).[3]

The Alaska National Interest Lands Conservation Act provides the Adamses' easement. It commands the Secretary of Agriculture to provide access to secure the owner's *reasonable use and enjoyment*. The Adamses' reasonable use and enjoyment clearly rests on their ability to freely access their property. We find the Adamses have an easement over the Forest Service road; accordingly, we reverse the portion of the district court decision that denied the Adamses an easement and vacate the district court injunction.

B. *Maintenance*

Our finding of an easement does not end our inquiry. This conclusion leads inevitably to the question of the extent of the easement. Under common law, a party having an easement by necessity is entitled to only one route, is entitled to reasonable use, and is entitled to an easement width that allows such reasonable use. *See* 25 Am.Jur.2d *Easements and Licences* §§ 64, 77, 78 (1966). "The extent of a way of necessity is that which is required for the complete and beneficial use of the land to which such way is impliedly attached." *Id.* at § 83.

The Adamses contend that an easement by implication or by necessity was created when the United States granted the land to their predecessors. Although the Adamses may have such an easement under common law, we need not analyze this issue. Where the United States owns the servient estate for the benefit of the public, there are additional concerns focused on preservation of the land. Common law rules are applicable only when not preempted by statute. Congress has affirmatively spoken in this area through the Alaska National Interest Lands Conservation Act and the Federal Land Policy and Management Act. *See United States v. Jenks*, 804 F.Supp. 232, 236–37 (D.N.M.1992) ("even if [the court] agree[s] with defendant that there are preexisting easements for each of the roads ... [the United States] can still regulate these access rights pursuant to [the Alaska National Interest Lands Conservation

Act] and [the Federal Land Policy Management Act].").

In *Montana Wilderness Ass'n v. United States Forest Service*, 496 F.Supp. 880 (D.Mont.1980), the district court found that a railroad had access to its property surrounded by federal land through an easement of necessity, implication, and under the Organic Act. However, this finding did not exempt the railroad from regulation by the Forest Service:

For all of the reasons stated above the court holds that [the railroad] does have a right of access to its property across federal lands. The exercise of that right is, of course, not absolute. Under the Constitution, Congress has the authority and responsibility to manage federal land. U.S. Const. Art. IV, § 3, cl. 2. Congress has by statute delegated this authority to agencies such as the Forest Service.... Thus, although [the railroad] must be allowed access to its property, the United States may regulate that access under statutes such as the Federal Land Policy and Management Act.

496 F.Supp. at 889 (citations omitted). *See also Utah v. Andrus*, 486 F.Supp. 995 (D.Utah 1979) (valid existing rights of access cannot be taken under the Federal Land Policy and Management Act but can be regulated since Congress had the constitutional authority and responsibility to manage federal land).

We vacate the injunction and remand the case to the district court to issue a modified injunction or an order clearly delineating the rights and responsibilities of both parties. The district court should include the following factors when evaluating the status of the parties. (1) The Adamses have a nonexclusive easement over the Clark Canyon Road but not the North Canyon Road or the North Canyon Switchback. (2) The Forest Service must provide reasonable access to the Adamses property via the Clark Canyon Road at all times. Reasonable access for the general public to hunt, fish, or camp may be unreasonable when applied to the Adamses who need year-round access sufficient to op-

---

3. For regulations promulgated under the Federal Land Policy and Management Act, *see* 45 Fed. Reg. 38327 (June 6, 1980), 36 C.F.R. Part 251 Subpart B.

erate a ranch. (3) The Adamses may not prevent the Forest Service or any other member of the public from using the portion of Clark Canyon Road that lies on Forest Service land. On remand, the district court should also consider the reasonableness of the applicable Forest Service regulations with regard to road maintenance.

### III

The Adamses brought a claim to quiet title to certain land they believed was erroneously surveyed. On the government's motion for summary judgment, the district court held that the Adamses' claim was barred by the statute of limitations in the Quiet Title Act, 28 U.S.C. § 2409a(g). On appeal, the Adamses claim that the district court erred.

The district court made extensive findings of fact. Additionally, the district court analyzed the quiet title issue in depth before granting summary judgment for the government on this claim. *Adams v. United States,* 687 F.Supp. 1479 (D.Nev.1988). We affirm the district court on the issue of quiet title.

### IV

The Adamses assert that they possess a vested water right under Nevada law and that that vested water right allows them the right to transport the water across Forest Service land. The district court agreed with the Adamses; the United States appeals.

To secure a water right-of-way under 43 U.S.C. § 661, the Adamses must have shown, by a preponderance of the evidence, that their water rights vested according to local custom or law. The district court found that the evidence offered by the Adamses, though scant, was sufficient to find a right-of-way. Again, we affirm the district court's holding that the Adamses possess a vested water right.

The vested water right and the accompanying right-of-way are not as broad as the Adamses may believe. In *Grindstone Butte Project v. Kleppe,* 638 F.2d 100, 103 (9th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981), we held that irrigation rights issued under 43 U.S.C. §§ 946–49 were qualified by a later statute that authorized certain regulations. In *Vogler,* 859 F.2d at 642, we held use of a presumed R.S. 2477 easement through a National Park subject to reasonable regulations. We have also held that the provisions of 43 U.S.C. § 661 should be read together with the provisions of R.S. 2477. *Gates of the Mountains Lakeshore Homes,* 732 F.2d at 1413 n. 4. Under 16 U.S.C. § 481, the use of water within National Forests is subject to regulation. *See* 36 C.F.R. § 251.53(*l*)(1). The Forest Service still has the authority to reasonably regulate the Adamses' easement.

### V

The Adamses have a nonexclusive easement that guarantees access to their property under the Alaska National Interest Lands Conservation Act. We **REVERSE** the decision of the district court denying this easement and **VACATE** the injunction issued by the district court. The Forest Service must provide reasonable access to the Adamses' property at all times. However, the Adamses must comply with reasonable Forest Service rules and regulations with regard to maintenance or road improvement. We **REMAND** the case to the district court to determine the rights and responsibilities of both parties to ensure both access and stewardship of public land. The district court should also determine the reasonableness of the Forest Service regulations concerning road maintenance and improvement.

We **AFFIRM** the district court determination that the Adamses' quiet title action was barred by the statute of limitations. We **AFFIRM** the district court's holding that the Adamses have a right-of-way to transport water over Forest Service land. Again we remind the Adamses that they must comply with reasonable Forest Service regulations.

Because we find the Adamses have an easement over the Forest Service road, damages, if any, will have to be recalculated. We **VACATE** the damages award and **REMAND** for reconsideration of the amount of damages.