**MOUNTAIN STATES LEGAL FOUNDATION, a nonprofit Colorado corporation on behalf of its members John and Lynn Hanson, Leo and Lois VanHoover, David and Lynnea Imel, John and Nancy Sumner, Jim and Geraldine Adkins, Lafe and Emma Cox, Plaintiffs,**

**v.**

**Mike ESPY, Secretary of Agriculture; F. Dale Robertson, Chief of the United States Forest Service; Gray F. Reynolds, Regional Forester; David F. Alexander, Supervisor of the Payette National Forest; and Stephen P. Mealey, Supervisor of the Boise National Forest, Defendants.**

**and**

**Idaho Sportsmen's Coalition and Boise Cascade Corporation, Intervenors.**

**Civ. No. 88–1061.**

United States District Court, D. Idaho.

Sept. 24, 1993.

Joanne Herlihy, Mountain States Legal Foundation, Denver, CO, Bruce M. Smith, Rosholt Robertson & Tucker, Boise, ID, for plaintiffs.

Maurice O. Ellsworth, U.S. Atty., D. Idaho, D. Marc Haws, Asst. U.S. Atty., Boise, ID, for defendants.

Victor M. Sher, Todd D. True, Katherine S. Poole, Sierra Club Legal Defense Fund, Seattle, WA, D. Bernard Zaleha, J.D., Boise, ID, for intervenor Idaho Sportsmen's Coalition.

Guy G. Hurlbutt, Tony J. Steenkolk, Boise Cascade Corp., Boise, ID, for intervenor Boise Cascade Corp.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING ACTION

### I. FACTS AND PROCEDURE

RYAN, Senior District Judge.

Now before the court in the above-entitled matter is the plaintiffs' Motion for Summary Judgment, filed on February 26, 1993. Also before the court is a Motion for Summary Judgment and Motion to Dismiss for Lack of Ripeness, filed by the defendants on February 26, 1993. These motions have been fully briefed[1] and a hearing was held on September 16, 1993. Therefore, the motions are now ripe for decision. The court will first summarize the factual and procedural background of this action and then address the issues raised in the cross-motions for summary judgment.

The following facts have been taken from the statements of facts presented by the parties in their opening memoranda in support of their respective motions. The parties have had no significant disagreement over the relevant facts, and the court understands that they desire to have this matter resolved expeditiously through cross-motions for summary judgment, without a trial.

This action involves a dispute over a road known as the South Fork of the Salmon River Road (hereinafter "SFSR road" or "the road"). This forest development road[2] runs through portions of the Payette and Boise National Forests in Idaho. Twenty-eight miles of the road run along the South Fork of the Salmon River through steep, mountainous terrain.

The mountainsides in this area consist of ancient granite and are part of the Idaho batholith. The soil is full of fine sediments and is highly erosive. Annual precipitation in the area averages between 20 and 60 inches, consisting mostly of snow. The precipitation washes sediments into the South Fork of the Salmon River and its tributaries. The road is constructed of native materials by cuts and fills and has been a major source of sediments entering the South Fork of the Salmon River.

The drainage of the South Fork of the Salmon River is one of the largest of the few remaining habitats in the Columbia River watershed for spring/summer chinook salmon and fall chinook salmon. The South Fork of the Salmon River contains critical spawning habitat for these species of salmon. It has been well-established that granite and other sediments in the river are harmful to the critical chinook salmon habitat. For example, sediments often cover the salmon nests or redds and suffocate the salmon eggs.

---

1. The court notes that two intervenors in this action, Idaho Sportsmen's Coalition and Boise Cascade Corporation, have each filed a memorandum setting forth their respective positions regarding the issues raised in the cross-motions for summary judgment.

2. A forest development road is a road "wholly or partly within or adjacent to and serving a National Forest and other lands administered by the Forest Service which has been included in the forest development transportation plan." 36 C.F.R. § 212.1(d) (1992). Intervenor Boise Cascade Corporation has attempted to dispute the fact that this road is a forest development road. However, the record before the court clearly establishes that the road is a forest development road.

Some of the lands of the Payette and Boise National Forests through which the SFSR road runs have been continuously withdrawn from the public domain since November 14, 1902, and were proclaimed a national forest in 1905. Other portions were withdrawn and proclaimed to be national forest in 1919. Although portions of the road's present route have an earlier history, much of the road's present alignment did not begin to appear until the late 1920s. Parts of the road were constructed by the United States Forest Service (hereinafter "Forest Service") through private contract in 1930. Later segments were completed in the same fashion by 1938 and succeeding years, culminating in automobile access from the town of Cascade, Idaho, to Yellow Pine, Idaho, in 1941. Remaining improvements were made into the 1950s.

The individual plaintiffs in this action live in, or desire to travel to and from, Yellow Pine, a town consisting of approximately 35 to 90 year-round residents. The population of the town may as much as double during the summer months. The area in and around Yellow Pine was first populated by trappers and miners, and the town of Yellow Pine was established around the turn of the century. The individual plaintiffs own private property in the Yellow Pine area. These lands are inholdings entirely surrounded by the Payette and Boise National Forests. Prior to completion of the SFSR road, access to Yellow Pine was over a public road from Cascade, Idaho, over Landmark Summit and along Johnson Creek to Yellow Pine, a distance of approximately 62 miles. Taking the SFSR road route, it is approximately 73 miles from Cascade to Yellow Pine. The plaintiffs insist that the SFSR road is the only feasible route to Yellow Pine during the winter months.[3]

As a forest development road, the SFSR road is administered and regulated by the Forest Service. The public has at times used the SFSR road in the winter when snow has closed other routes to Yellow Pine. The road is apparently better suited for use in inclement weather than other routes because, with the exception of Big Creek Summit, there are no elevated summits to traverse. The plaintiffs contend that during mild winters the SFSR road often receives very little snow, especially at lower elevations, and it is possible to drive the SFSR road nearly all winter without plowing. However, it appears that in many years since its completion in 1941, the SFSR road has been closed by winter snowfall. In the winters of 1985–86 and 1987–88, the Forest Service allowed Valley County to plow the road and keep it open for winter use by the public. Apart from the years affected by the present litigation, it appears that those have been the only two winters that the Forest Service has allowed the road to be kept open by Valley County.

The Forest Service restricted public travel on the road during the winter of 1987–88 to a 48–hour period each week. The plaintiffs responded by filing the present action for declaratory and injunctive relief in February of 1988. The plaintiffs sought a preliminary injunction in February of 1988, but the court encouraged the parties to work together to resolve the dispute between themselves. On March 7, 1988, the parties filed a stipulation with the court. Under the terms of the stipulation, the Forest Service agreed to permit unrestricted traffic over the SFSR road commencing March 8, 1988, and continuing through December 31, 1988, with the following limitations: (1) that the road would be closed to vehicle traffic between 10:00 a.m. and 10:00 p.m. when mud conditions were such as to be likely to cause damage to the road; and (2) the Forest Service would close the road or otherwise restrict traffic between 10:00 p.m. and 10:00 a.m. if it determined that vehicle traffic during those hours would

3. In all, there are three routes to Yellow Pine: the SFSR road, the Johnson Creek road, and the Lick Creek road. The plaintiffs maintain that the Lick Creek road is impractical for use in the winter months because avalanches frequently occur along that route. The plaintiffs also maintain that the Johnson Creek road is not available in the winter months because Valley County and the Forest Service have designated it for recre-ational snowmobile use in the winter, and it is closed to automobile traffic. The Forest Service responds that the decision to close the Johnson Creek road and restrict it to snowmobile use is a decision made entirely by Valley County, and that the plaintiffs should look to Valley County if they wish to change the winter status of that road.

greatly damage the road and cause increased sedimentation into the South Fork of the Salmon River.

In late September of 1988, Congress appropriated $8 million to pave the road. On December 6, 1988, Order No. 0412–88 was jointly issued by the Forest Supervisors of the Payette and Boise National Forests as a special order effectively closing the SFSR road from January 3, 1989, through April 1, 1989, citing the need for protection of special biological communities as the reason for doing so. Shortly thereafter, the defendants filed a motion for summary judgment. The defendants argued that the plaintiffs had no statutory or constitutional right of access to their private inholdings in Yellow Pine via the SFSR road. The defendants further argued that the private inholders were provided with adequate winter public access over the Warm Lake–Landmark–Johnson Creek route.

The defendants' motion for summary judgment was denied on December 22, 1988, on the grounds that genuine issues of material fact precluded the court from granting summary judgment at that time. In that order, the court also granted a preliminary injunction enjoining the defendants from closing the road through December of 1989. However, the court allowed the defendants to close the road during times when traffic would damage the road and increase sedimentation in the river because of weather and other conditions. The court then set the matter for an evidentiary hearing on July 31, 1989.

On July 5, 1989, the parties filed a Stipulation in which the defendants agreed to allow the public to travel over the road until the environmental analysis and record of decision regarding the paving of the road was completed. The Stipulation provided for access during the winters of 1989–90 and 1990–91, subject to certain conditions. The parties further requested that the court hold this litigation in abeyance in the interim. Therefore, the court administratively terminated this action without prejudice to the rights of the parties to reopen the proceedings for good cause shown, for the entry of any stipulation or order, or for any other purpose required to obtain a final resolution of the litigation.

The Forest Service then completed its environmental impact statement pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., on the proposal to pave the road. The Forest Service decided to pave the road, subject to certain changes in the paving plan and with the addition of certain mitigation measures. The construction contract was awarded to Tidewater Construction Company on December 11, 1991, and prepaving work on the road began shortly thereafter.

On April 22, 1992, the United States Department of Commerce, through its National Marine Fisheries Service ("NMFS"), listed the spring/summer chinook salmon and the fall chinook salmon as threatened species under the Endangered Species Act, 16 U.S.C. § 1531, et seq. NMFS also listed the South Fork of the Salmon River as proposed critical habitat. NMFS has not been made a party to this action.

In response to the listing, the Forest Service and Tidewater Construction Company proceeded with only those prepaving activities which NMFS declared were not likely to affect the salmon habitat adversely. Formal consultation proceeded between the Forest Service and NMFS as required under the Endangered Species Act regarding the proposal by the Forest Service to pave the road. A biological assessment ("BA") was prepared by the Forest Service and sent to NMFS in June of 1992. In December of 1992, formal consultation on paving the road was suspended to focus on the issues of most concern in this case: winter use and snow plowing or snow removal.

NMFS then adopted Recommendation 8 of the BA prepared by the Forest Service. This recommendation provides:

[A]ny and all snow removal would be conducted only with equipment capable of distributing snow over a large area, such as a rotary snow blower, or equipment capable of removing snow from the road surface and storing it in a location that is not subject to mass failure. Snow would not be pushed onto fill slopes with conventional bladed equipment.

*See* Mem. of U.S.Supp.Mot.Summ.J. & Mot.Dismiss, filed Feb. 26, 1993, at 6–7 (*quoting* NMFS Consultation Letter of December 3, 1992, and David Burns' Biological Assessment, June 12, 1992, Recommendation 8, at 7).

In the past, Valley County and the Stibnite Mining Company have performed the snow-plowing permitted on the SFSR road. The record shows that these entities have rotary plows and/or the equipment needed to front load snow for transportation and storage at appropriate sites. These methods of snow removal are more costly than traditional blade snow plowing.

On December 3, 1992, the plaintiffs moved to reopen this action and sought an order from the court permitting winter access and snow plowing in the usual and customary manner pending ultimate resolution of this matter. On December 21, 1992, the court granted the motion to reopen and ordered the Forest Service to allow public access over the SFSR road until further order from the court. In that order, the court imposed certain restrictions with respect to snow removal and authorized the Forest Service to close the road when weather conditions were likely to damage the road and/or increase sedimentation into the South Fork of the Salmon River.

The Forest Service and NMFS have developed a number of other interim conditions which they feel are necessary to minimize road surface erosion and to protect the integrity of the fill slopes if snow removal is to be allowed. These conditions were intended to be in effect pending completion of the formal consultation process between the Forest Service and NMFS over the proposal to pave the road.

In Count I of their amended complaint, the plaintiffs allege that any closure of the SFSR road and any restrictions or regulations affecting the public's use of the road, other than ordinary traffic laws, is a violation of their constitutional rights to travel and equal protection.[4] In Count II, the plaintiffs allege that the Forest Service has failed to provide them with adequate access to their inholdings as required under the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3210(a). In Count III, the plaintiffs allege that actions of the Forest Service regarding the SFSR road violate the Organic Act of 1897, 16 U.S.C. §§ 423, *et seq.*[5] In Count IV, the plaintiffs allege that the defendants have violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–706. And, in Count V, the plaintiffs allege that the SFSR road is covered by an easement granted pursuant to 43 U.S.C. § 932, which is not under the control of the Forest Service and, therefore, the Forest Service may not preclude access on this easement.[6]

The plaintiffs ask this court to declare that (1) the plaintiffs' constitutional rights to travel and equal protection have been and are

4. In Count I, the plaintiffs also raise a number of other claims based generally on the constitution, such as violation of the rights of personal mobility, free association, and a normal family life. The plaintiffs further claim that they have been and may be subject to an unconstitutional taking of private property for a public purpose without just compensation, in violation of the Fifth Amendment.

The defendants have moved for summary judgment on the claims set forth by the plaintiffs in their Amended Complaint. In bringing their own motion for summary judgment and in defending against the defendants' motion for summary judgment, the only constitutional claims pursued by the plaintiffs are the right to travel and equal protection claims. Therefore, the court concludes that the plaintiffs have abandoned these other constitutional claims and that the defendants are entitled to summary judgment on these claims.

5. The plaintiffs have not mentioned their claim based on violation of the Organic Act during the course of the cross-motions for summary judgment. Again, in light of the fact that the defendants have moved for summary judgment and the fact that this action is to be resolved by dispositive motion without a trial, the court must assume that the plaintiffs have abandoned this claim, and summary judgment will be entered in favor of the defendants.

6. The plaintiffs have not pursued their easement cause of action in the present cross-motions for summary judgment. They have made no arguments based on this claim, and they have not come forward with any evidence to support it. Therefore, summary judgment will be entered in favor of the defendants on this claim also.

being violated by the defendants' actions in regulating and/or closing the SFSR road; (2) that the plaintiffs have a right of access which allows them to use the SFSR road, subject only to traffic limitations such as speed and weight limits; and (3) that the terms and conditions set by the defendants on use of the road are arbitrary and capricious, not in accordance with the law, and set those terms and conditions aside. The plaintiffs further ask that the court permanently enjoin all officers of the Forest Service from restricting access and/or imposing terms and conditions on access (other than regulations such as speed and weight limits) on the SFSR road.

## II. ANALYSIS

### A. The Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S.Ct. at 2552.[7]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975) (quoting First Nat'l Bank v. Cities Serv. Co., Inc., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. See e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

### B. Motions for Summary Judgment

As framed in the briefing submitted by the parties, the issues to be decided in the cross-motions for summary judgment are as follows: (1) whether the plaintiffs' constitutional rights to travel and equal protection have been and are being violated by Forest Service terms and conditions imposed on public travel over the SFSR road, including periodic closures of the road because of weather conditions which damage the road and result in excessive sedimentation being introduced

---

7. See also Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56(e).

into the South Fork of the Salmon River; (2) whether the plaintiffs have a right of access under ANILCA, and, if so, whether terms and conditions on public travel over the road, including periodic closures of the road and prescribed snowplowing methods, violate the plaintiffs' statutory right of access; and (3) whether the plaintiffs' statutory right of access under ANILCA can be subject to restrictions necessitated by the dictates of the Endangered Species Act. The court will now address each of these issues in turn.

### 1. Constitutional right to travel.

The plaintiffs argue that Forest Service restrictions on public use of the SFSR road, including periodic closures of the road, violate their constitutional right to travel. The court has carefully reviewed all of the memoranda submitted by the parties, and the cases cited therein. Based upon this review, the court finds that the plaintiffs' constitutional right to travel has not been violated. Furthermore, the court can resolve this dispute without basing its decision on constitutional grounds.

It is a well established principle of jurisprudence that courts should avoid deciding cases on constitutional grounds where possible. See Republic Nat'l Bank v. United States, 506 U.S. ——, ——, 113 S.Ct. 554, 564, 121 L.Ed.2d 474, 490 (1992) (White, J., concurring); Three Affiliated Tribes v. Wold Engineering, P.C., 467 U.S. 138, 157, 104 S.Ct. 2267, 2279, 81 L.Ed.2d 113 (1984); Leroy v. Great Western United Corp., 443 U.S. 173, 181, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979); United States v. Feeney, 984 F.2d

1053, 1056 (9th Cir.1993). The dispute in this matter can be easily resolved by referring to applicable statutes and regulations, without deciding the constitutional issues raised by the plaintiffs. Nevertheless, although the court is inclined to exercise judicial restraint and not reach the constitutional issues, the court will briefly comment on these issues in order to provide the plaintiffs with a complete record of its decision.

■ There is no express right to travel in the Constitution. While the exact source of this right is unclear, a long line of decisions handed down by the United States Supreme Court have recognized the right to travel freely between and among the states as a fundamental constitutional right. Many of these cases have been cited by the parties in their memoranda. The court has carefully reviewed all of the cases, as well as others not cited by the parties.

■ The Supreme Court has addressed the right to travel in the context of state laws which interfere with interstate commerce,[8] or which may have the effect of discouraging citizens from moving from one state to another or of penalizing individuals who have newly arrived in a given state.[9] In this context, it has been said that,

[a] law regulating the right to change residency should be tested under the due process guarantee if it is a general limitation on the ability of all persons to travel and under the equal protection guarantee if it is a denial of the right to travel on only a limited class of persons.

---

**8.** See, for example, Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L.Ed. 745 (1867) (Nevada statute which imposed a tax on railroads for every passenger carried out of the state declared unconstitutional interference with interstate commerce and right to travel).

**9.** See, for example, Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (statute penalizing the bringing of a non-resident person into the state by anyone knowing the individual to be indigent declared unconstitutional under the Commerce Clause, with four concurring opinions also finding the statute contrary to the privileges and immunities protected under the Fourteenth Amendment); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600

(1969) (durational residency requirement for subsistence welfare benefits held invalid as a restriction on the fundamental right to travel); Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (one-year residency requirement for divorce upheld as not interfering with the right to relocate from one state to another); Jones v. Helms, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981) (upholding statute making abandonment of child by a parent a felony if the parent leaves the state after abandonment); Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (invalidating state distribution of state money to citizens in varying amounts based upon the length of each citizen's residence).

3 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure*, § 18.38 (2d ed. 1992). As the right to travel has been held to be a fundamental right, government actions affecting that right are subject to strict scrutiny and will only be upheld if the actions are shown to be necessary to promote a compelling governmental interest. *See Shapiro v. Thompson*, 394 U.S. at 634, 89 S.Ct. at 1331.

■ The court has carefully considered the arguments made on behalf of the plaintiffs, both in their memoranda and at the hearing held on September 16, 1993. As noted above, the court is of the opinion that the constitutional right to travel, as recognized in the decisions of our United States Supreme Court, has not been violated by the actions of the defendants in this matter. The Forest Service has not attempted to prevent individuals from travelling to and from the town of Yellow Pine, Idaho. The Forest Service is simply regulating traffic over an unpaved forest development road in such a way as to protect threatened species of salmon and the habitat critical to their survival. Nothing in the cases cited by the plaintiffs, nor in the cases reviewed independently by the court, persuades the court that the constitutional right to travel confers upon these plaintiffs the constitutional right to use a particular unpaved forest development road through a national forest without any restriction or regulation whatsoever by the Forest Service.

■ Even when subjected to strict scrutiny, the court finds that the actions of the Forest Service in regulating public travel over the SFSR road are necessary to promote a compelling governmental purpose. In fact, the court recognizes at least two compelling governmental purposes here. First, as a landowner, the United States, through its Forest Service, has the right to regulate when and under what circumstances the public may enter and use national forest lands so as to protect those lands and the resources found there. Second, in passing the Endangered Species Act, the Congress of the United States made it clear that the preservation of threatened and endangered species, and the critical habitat necessary for their survival, is a governmental purpose of the highest order. *See Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 171–81, 98 S.Ct. 2279, 2290–95, 57 L.Ed.2d 117 (1978).

■ In addition, the court finds that the regulations on use of the SFSR road at issue in this case, including periodic limited closures of the road and specific methods of snow plowing to be allowed on the road, are narrowly tailored to meet these compelling governmental purposes.[10] And lastly, the court finds that the burden on these plaintiffs is not so great as to make these regulations unconscionable to the court. The plaintiffs have chosen to live in a remote and, at times, harsh environment within national forest lands. By their choice, they enjoy certain unique advantages and a lifestyle for which they are to be envied in many ways. During the winter months, they face obstacles and hardships which citizens in urban areas may find hard to comprehend. However, the court is not persuaded by the plaintiffs' claim that because they cannot use the most convenient means of access to their homes at all times and without restriction, they are being denied their fundamental constitutional right to travel.

### 2. *Right of Access under ANILCA.*

■ The plaintiffs contend that they have a right of access to their inholdings guaranteed to them under the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3101, *et seq.* Section 3210(a) of ANILCA provides:

Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with rules and regulations

---

**10.** "To withstand strict scrutiny a statute must be precisely tailored to serve a compelling state interest." *Hoffman v. United States*, 767 F.2d 1431, 1435 (9th Cir.1985).

applicable to ingress and egress to or from the National Forest System.

> 16 U.S.C.S. § 3210(a) (Law.Co-op.1984). The provisions of ANILCA apply outside of Alaska. *See Montana Wilderness Ass'n v. United States,* 655 F.2d 951, 957 (9th Cir. 1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). The Forest Service now concedes that the plaintiffs have a right of access under ANILCA. Therefore, the issue becomes, what is the extent of that right? In other words, may the Forest Service impose terms and conditions on the plaintiffs' use of the road, including periodic limited closures of the road and snowplowing requirements?

■ The plaintiffs contend that their right to use the SFSR road under ANILCA is absolute and may not be restricted or regulated by the Forest Service in any way. The court is unpersuaded by the plaintiffs' argument. While the plaintiffs seize upon language in Section 3210(a) which they find favorable to their position, they ignore the clear language which confers upon the Forest Service the affirmative right to prescribe reasonable terms and conditions of access, and which subjects the right of access to the rules and regulations applicable to ingress and egress to and from the National Forest System.

Having found that the Forest Service may set reasonable terms and conditions on use of the road, the court must now look to the reasonableness of the terms and conditions imposed by the Forest Service on use and maintenance of the SFSR road. *See Adams v. United States,* 3 F.3d 1254, 1258–59, (9th Cir.1993). This aspect of the case is best addressed in the context of the relationship between ANILCA and the Endangered Species Act.

### 3. *Relationship between ANILCA and the Endangered Species Act.*

■ The Forest Service is in a difficult position with respect to the SFSR road. The inholders in the Yellow Pine area have a right of access over the SFSR road under ANILCA, as conceded by the Forest Service.

The plaintiffs' access must be sufficient to afford them the reasonable use and enjoyment of their lands in summer and fall, but during the winter and spring months as well. Clearly, the Forest Service must coordinate its obligations under ANILCA with its clear mandate under the Endangered Species Act to preserve and protect threatened species of salmon and the critical habitat provided by the South Fork of the Salmon River. It is within this overall context which the court must review the terms and conditions sought to be imposed by the Forest Service on use of the SFSR road.

Section 7 of the Endangered Species Act affirmatively commands all federal agencies to "insure any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species...."
> 16 U.S.C.S. § 1536(a)(2) (Law.Co-op.1984). On April 22, 1992, NMFS listed the spring/summer chinook salmon and the fall chinook salmon as threatened species under the Endangered Species Act. NMFS also listed the South Fork of the Salmon River as proposed critical habitat.

Sediments flowing into the South Fork of the Salmon River represent a tangible threat to the continued existence of the spring/summer and fall chinook salmon. The Forest Service has shown that the unpaved SFSR road is a major source of sediments being introduced into the river. With the congressional appropriation of $8 million, the Forest Service has prudently decided to pave the road. An environmental impact statement and record of decision have been prepared on this decision. The Forest Service has engaged in formal and informal consultation with NMFS on its proposal to pave the road.

The decision by the Forest Service to pave the road has been challenged in another suit.[11] Until it is allowed to proceed with the paving, the Forest Service (working with NMFS) has developed guidelines for use of the SFSR road in the winter and when particular weather and road conditions occur. These guidelines have been developed in an

---

**11.** *See Forest Conservation Council v. Espy,* CV No. 92–0341–S–HLR (D.Idaho Aug. 27, 1992).

effort both to continue to allow the inholders to use the road, and to protect the threatened salmon and their critical habitat in the South Fork of the Salmon River.

The conditions are as follows:

1. All road management actions, (i.e. snow removal, vehicle type restrictions, information signs, salt and sand spreading prohibitions, and spill contingency plans) shall follow those procedures stated in the Forest Service's June 12, 1992, biological assessment (BA) concerning the SFSR road, including recommendations prepared by Dr. David Burns and applicable BA amendments.... Recommendation number 8 in the June 12, 1992, BA, concerning road maintenance and snow plowing equipment, is especially pertinent.

2. The road should be closed to traffic anytime weather and road conditions would significantly increase the likelihood of sediment transport into the SFSR. Examples of these conditions are rainfall and/or snow thaw events.

3. Unrestricted public traffic should not be allowed on the SFSR [road] between 10:00 AM and 10:00 PM each day [during the winter months]. These time restrictions have been imposed by the Forest Service for several years. The intent of these restrictions is to help maintain the road surface integrity by allowing traffic only at those times when the road surface is most likely to be frozen and therefore, least likely to be impacted by traffic.

4. Snow removal should be performed along the shoulders of all out-sloping road surfaces. This snow removal will allow proper water runoff of out-sloped areas during rainfall and/or snow thaw events and will help decrease the possibility of sediments reaching the SFSR.

5. The Forest Service should monitor the road and provide NMFS monthly reports on the effectiveness of conditions 1–4 and the recommendations in the BAs and amendments in preventing sediment delivery to the SFSR. [NMFS] will use these monthly reports to determine if additional recommendations to protect listed species are needed.

Mem. of United States Supp.Mot.Summ.J. & Mot.Dismiss, filed Feb. 26, 1993, attached NMFS consultation letter of Dec. 3, 1993, at 2.

■ The plaintiffs challenge any and all restrictions on what they perceive to be an absolute right of access over the SFSR road. They contend that because ANILCA was enacted after the Endangered Species Act, ANILCA takes precedence when the two statutes come into conflict. The plaintiffs rely on the general rule that "the more recent of two irreconcilably conflicting statutes governs." *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981) (citation omitted). However, the Supreme Court has cautioned that courts should be wary of finding that two statutes are in irreconcilable conflict, as repeals by implication are not favored. *Id.* Rather, "[w]e must read the statutes to give effect to each if we can do so while preserving their sense and purpose." *Id.* at 267, 101 S.Ct. at 1678.

The court has carefully considered the plaintiffs' arguments and the cases cited in support thereof. The court finds that ANILCA and the Endangered Species Act are not in irreconcilable conflict with each other. While the Forest Service must provide adequate access to inholders, access may be regulated by the Forest Service under ANILCA; the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701, *et seq.*; and the regulations promulgated thereunder.[12] Furthermore, the Forest Service can and must regulate access in such a manner that the authorized or permitted access is not likely to jeopardize the continued existence of the threatened species of salmon or adversely affect the critical habitat of the salmon. Although the inholder's use of the road will not be without restriction, this view allows

---

**12.** The Forest Service regulations promulgated under ANILCA are found in 36 C.F.R. §§ 251.-110, *et seq.* These regulations require those seeking access to request and secure a special use permit from the Forest Service. The regulations also require the Forest Service to ensure that the "route is so located and constructed as to minimize adverse impacts on soils, fish and wildlife, scenic, cultural, threatened and endangered species, and other values of the Federal land." 36 C.F.R. § 251.114(f)(2) (1992).

the Forest Service to give effect to the congressional intent embodied in both ANILCA and the Endangered Species Act.

In a recent decision, the Ninth Circuit declared:

> Congress intended that "such owners had the right of access to their lands subject to reasonable regulation by . . . the Secretary of Agriculture in the case of national forest . . . under the Federal Land Policy and Management Act of 1976." . . . While mandating reasonable access, the statute directs the owners of the private land to "comply with the rules and regulations applicable to ingress and egress to and from the National Forest System." 16 U.S.C. § 3210(a).
>
> The Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701, et seq., provides the Secretary with the authority "to grant, issue, or renew rights of way over [Forest Service lands] for . . . roads, trails [and] highways." 43 U.S.C. § 1761(a). It also provides:
>
> Rights-of-way shall be granted, issued, or renewed pursuant to this subchapter under such regulations or stipulations, consistent with the provisions of the subchapter or any other applicable law, and shall also be subject to such terms and conditions as the Secretary concerned may prescribe regarding extent, duration, survey, location, construction, maintenance, transfer or assignment, and termination.

*See Adams v. United States,* 3 F.3d 1254, 1258–59, (9th Cir.1993) (citations and footnote omitted).[13]

■■■ Based on this recent decision by the Ninth Circuit, and the statutes themselves, the court finds that the Forest Service may reasonably regulate the inholders' use of the SFSR road under ANILCA and the Federal Land Policy and Management Act, in conjunction with the dictates of the Endangered Species Act. In light of this finding, the court will now review the agency actions in regulating use of the SFSR road under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–706. The APA empowers the court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C.S. § 706(2)(A) (Law.Co-op.1989).

The Forest Service is charged with overseeing national forest lands and protecting the natural resources found therein. In *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), the Supreme Court declared that "[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Id.* at 231, 94 S.Ct. at 1072. In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court addressed in great length the proper role of courts in reviewing agency rules and regulations.

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given *controlling* weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a *reasonable* interpretation made by the administrator of an agency.

---

**13.** As of the date of this order, this decision has not been released by the Ninth Circuit Court of Appeals. Therefore, the opinion is still subject to revision or withdrawal. Nevertheless, the court finds that the decision provides some insight and guidance from the Ninth Circuit which is useful to the court in this matter.

The court also notes that the decision in *Adams* found that the right of access under ANILCA rises to the level of an easement. However, the court concurs with the arguments of counsel for the Forest Service that the finding of an easement in *Adams* may have been prompted in large part by the fact that the Adamses also had a water right affected by the road at issue in that case. In addition, the Endangered Species Act was not at issue in the *Adams* case:

We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations

"has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations....

"... if this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

*Id.* at 843–45, 104 S.Ct. at 2782–83 (footnotes and citations omitted) (emphasis added).

The terms and conditions imposed by the Forest Service on use of the SFSR road do not technically constitute a construction or interpretation of a statute as envisioned in the *Chevron* case. Rather, these terms and conditions represent an exercise of authority pursuant to specific statutes and regulations. Nevertheless, it seems reasonable to assume that *Chevron* applies to implementing measures that administrative agencies undertake within their specific area of expertise. In addition, the rationale for the deference required by *Chevron* stems from the long recognition that agencies possess particular expertise and experience regarding matters committed to their administration.

Upon review of ANILCA, the court is of the opinion that Congress has explicitly left a gap for the Forest Service to fill. Under ANILCA, the Forest Service is expressly given permission to prescribe reasonable terms and conditions of access under the statute. 16 U.S.C. § 3210(a). The statute clearly gives the Forest Service discretion to determine what constitutes adequate access. *Id.* In addition, the inholder must comply with the rules and regulations applicable to ingress and egress to and from the National Forest System. *Id.* Furthermore, the legislative history contemplates that access under ANILCA is subject to the Federal Land Policy and Management Act and the rules and regulations promulgated thereunder. *See Adams v. United States,* 3 F.3d 1254, 1258–59, (9th Cir.1993). Such regulation necessarily involves adherence to the dictates of the Endangered Species Act.

In light of the explicit delegation of authority to the Forest Service regarding regulation of access under ANILCA, the decision in *Chevron* mandates that the regulations on use of the SFSR road by the inholders are to be afforded *controlling* weight, unless they are arbitrary, capricious, or manifestly contrary to the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. at 844, 104 S.Ct. at 2782.

As noted above, sediments from the SFSR road adversely effect the habitat and, therefore, jeopardize the continued existence of threatened species of salmon. The increased sedimentation caused by traditional snowplowing is documented in the record before the court. The regulation of winter use of the road and the prescription of particular methods of snowplowing to achieve clear resource management directives are matters involving the particular expertise of the Forest Service and NMFS.

The court has carefully reviewed the entire record in this matter and the terms and conditions which the Forest Service has determined should be imposed on use of the road. Based upon this review, the court finds that the terms and conditions appear to be reasonable and are not arbitrary, capricious, or manifestly not in accordance with ANILCA or any other statute involved in this action. Under the circumstances of this case and the applicable laws and regulations, the court will defer to the judgment exercised by the agencies entrusted by Congress to manage and protect the lands and natural resources of the Payette and Boise National Forests.

Even if ANILCA were silent on the question of whether the Forest Service may impose restrictions on access over the SFSR road, the court would still uphold the terms

and conditions at issue under the reasonableness standard enunciated in *Chevron*. Under this standard, the court must uphold the terms and conditions so long as it finds that they are reasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 844, 104 S.Ct. at 2782. Upon a careful and detailed review of the entire record in this matter, the court concludes that the restrictions imposed are in fact reasonable under the circumstances. This finding is further supported by the fact that the Forest Service is faced with the difficult task of providing access to inholders in the Yellow Pine area, while at the same time preventing further losses of threatened species of salmon and their critical habitat.

### 4. *Conclusion.*

After a careful and thorough review of the entire record in this matter, the court finds that there are no genuine issues of material fact which preclude the court from entering summary judgment. The court further finds that the plaintiffs' constitutional rights to travel and equal protection have not been violated by the defendants. In addition, the court holds that the plaintiffs have a right of access over the SFSR road. The court further holds that the defendants may regulate the plaintiff-inholders' use of the SFSR road pursuant to the statutes and regulations outlined above. And, finally, the court finds that ANILCA and the Endangered Species Act are not in irreconcilable conflict and may be administered by the Forest Service in such a way as to give effect to the purpose of both statutes.

Pursuant to these findings and conclusions, the Forest Service may impose the terms and conditions noted above on use of the SFSR road, including periodic closures of the road [14] and specifications on the method of snowplowing and the equipment to be used in snowplowing.[15]

### C. *Motion to Dismiss*

■■■ The defendants have also moved to dismiss this action on the grounds that the plaintiffs have not applied for a special use permit to use the SFSR road for inholder access, as required under 36 C.F.R. §§ 251.54 and 251.110. Therefore, the defendants argue that the plaintiffs have failed to exhaust their administrative remedies and that this litigation should be dismissed as premature. The court notes that one other court has upheld the special use permit regulations relating to ANILCA. *See United States v. Jenks*, 804 F.Supp. 232 (D.N.M. 1992). This decision is presently on appeal before the Tenth Circuit Court of Appeals.

Upon careful review and consideration of this matter, the court finds that the permit process is not workable in this situation. This case does not involve a single inholder seeking access, but rather, an entire town. It is unclear who the Forest Service would require to obtain a permit. The court is of the opinion that, in addition to the landowners themselves, their friends, relatives, and necessary business associates should also have access. Therefore, in light of the court's ruling on the cross-motions for summary judgment and the unique circumstances of this case, the court has decided that the motion to dismiss should be denied.

### III. *ORDER*

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the plaintiffs' Motion for Summary Judgment, filed February 26, 1993, should be, and is hereby, GRANTED in part and DENIED in part. The motion is granted in that the

---

14. At the hearing on September 16, 1993, counsel for the plaintiffs conceded that the residents of Yellow Pine have been able to live with the periodic closures in the past. Yet, the plaintiffs are concerned about medical emergencies. The court is confident that should a medical emergency require use of the road, the Forest Service will allow such use without recourse to the individuals involved.

15. The court understands the concerns expressed by the plaintiffs regarding the increased costs of snowplowing. The court attempted to accommodate these concerns in its order of December 22, 1992, in which the court allowed the road to be plowed using the usual blade method with a wing extension on the blade. The record before the court establishes that this modification may not cure the problems caused by the blade method of snowplowing.

plaintiffs have a right of access over the SFSR road under ANILCA. The motion is otherwise denied.

IT IS FURTHER ORDERED that the Motion for Summary Judgment and Motion to Dismiss for Lack of Ripeness, filed by defendants on February 26, 1993, should be, and is hereby, GRANTED in part and DENIED in part. The motion is denied with respect to the request to dismiss for failure to exhaust administrative remedies. The motion is granted in all other respects, other than the court's holding that the plaintiffs have a right of access over the SFSR road under ANILCA. The defendants may impose reasonable terms and conditions on use of the SFSR road and may further regulate use of the road in accordance with all applicable statutes and regulations.

IT IS FURTHER ORDERED that this action should be, and is hereby, DISMISSED.