**UNITED STATES of America, Plaintiff–Counter–Defendant–Appellee,**

v.

**Randolph JENKS, Defendant–Counter–Claimant–Appellant,**

**National Inholders Association; New Mexico Cattle Growers Association; New Mexico Farm and Livestock Bureau; Arizona & New Mexico Coalition of Counties for Stable Economic Growth; New Mexico Wool Growers' Association; the South Eastern New Mexico Grazing Association; the New Mexico Farm and Livestock Bureau; and the Federal Lands Legal Foundation, Amici Curiae.**

No. 92–2171.

United States Court of Appeals, Tenth Circuit.

April 26, 1994.

court, obstruction of justice, and for perpetrating constructive fraud on the court is denied.

Peter Appel, Atty., (Roger Clegg, Acting Asst. Atty. Gen., Don J. Svet, U.S. Atty., John W. Zavitz, Asst. U.S. Atty., Albuquerque, NM, and Jacques B. Gelin, Atty., Dept. of Justice, with him on the brief), Environ-

ment and Natural Resources Div., Dept. of Justice, Washington, DC, for plaintiff-appellee.

Steven J. Lechner (William Perry Pendley with him on the brief) of Mountain States Legal Foundation, Denver, CO, for defendant-appellant.

Karen Budd–Falen of the Federal Lands Legal Foundation, Cheyenne, WY and Eric Twelker, Atty., Juneau, AK, for amici curiae.

Before BALDOCK, BARRETT, and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Randolph Jenks appeals the district court's order enjoining his use of three roads providing access to his inholdings[1] without Forest Service authorization pursuant to the Alaska National Interest Lands Conservation Act of 1980, 16 U.S.C. §§ 3101–3233 ("ANILCA"). We have jurisdiction under 28 U.S.C. § 1291.

I.

This case of first impression within our circuit, involving a dispute over access to inholdings, is the modern legacy of early congressional enactments granting public land to private individuals to promote the settlement of the western portion of the United States. Principal among these enactments was the Homestead Act of 1862, which granted 160 acres of land to individuals who agreed to live on, and make improvements to the land for five years. See Act of May 20, 1862, ch. 75, 12 Stat. 392 (codified at 43 U.S.C. §§ 161–284) (repealed 1976).[2] Although the Homestead Act made no provision for access to and from granted land over the retained lands of the United States, it was presumed that "an implied license" to use public lands would provide settlers with unimpeded access to their property. See

Buford v. Houtz, 133 U.S. 320, 326, 10 S.Ct. 305, 307, 33 L.Ed. 618 (1890).

Homesteaders' unimpeded access across federal lands remained largely unchallenged by the federal government until the late nineteenth century, when "efforts expanded to protect the nation's natural resources from the results of what was perceived as overly generous land use policies." 43 Op.Att'y Gen. No. 26 at 4. In 1891, Congress passed a law authorizing the President to reserve forest lands from the public domain. See Act of March 3, 1891, ch. 561, § 24, 26 Stat. 1103 (codified at 16 U.S.C. § 471) (repealed 1976). Pursuant to this Act, on February 22, 1897, President Cleveland issued proclamations placing approximately twenty million acres of public land in forest reserves. See Montana Wilderness Ass'n v. United States, 496 F.Supp. 880, 888 (D.Mont.1980), aff'd on other grounds, 655 F.2d 951 (9th Cir.1981). The proclamations prevented any settlement on lands reserved in the national forest system.

Following the issuance of President Cleveland's proclamations, Congress sought to protect the access rights of homesteaders and others owning property within the newly created forest reserves by enacting the Forest Service Organic Administration Act, ch. 2, 30 Stat. 34 (1897) (codified at 16 U.S.C. §§ 473–482, 551). Section 478 of the Organic Act ensured access over national forest land to "actual settlers" and "protect[ed] whatever rights and licenses with regard to the public domain existed prior to the reservation." Montana Wilderness, 496 F.Supp. at 888 (citation omitted) (construing 16 U.S.C. § 478).

By 1976, Congress had enacted a tangled array of laws granting rights-of-way across federal lands. See, e.g., 43 U.S.C. § 932 (repealed 1976) (granting rights-of-way for construction of highways over public lands). In an effort to untangle these laws and establish a statutory scheme for the management of forest lands, Congress passed the Federal

---

1. Inholdings constitute property completely surrounded by property owned by the United States. See Rights–of–Way Across Nat'l Forests, 43 Op. Att'y Gen. No. 26, n. 3 (June 23, 1980).

2. Subsequent Congressional enactments increased the amount of acreage which could constitute a homestead. See, e.g., Desert Lands Act,

ch. 107, 19 Stat. 377 (1877) (codified at 43 U.S.C. §§ 321–339) (allowing homesteads larger than 160 acres in dry western areas); Enlarged Homestead Act, ch. 160, 35 Stat. 639 (1909) (codified at 43 U.S.C. §§ 218–221) (repealed 1976) (allowing homesteads of 320 acres for dry farming).

Land Policy and Management Act ("FLPMA"). *See* Pub.L. No. 94–579, 90 Stat. 2744 (codified at 43 U.S.C. § 1701–1784 (1976)). Title V of FLPMA repealed over thirty statutes granting rights-of-way across federal lands and vested the Secretaries of Agriculture and Interior with authority "to grant, issue, or renew rights of way over [Forest Service and public lands] for ... roads, trails [and] highways." 43 U.S.C. § 1761(a). With the passage of FLPMA, Congress believed inholders "had the right of access to their [inholdings] subject to reasonable regulation ... under [ ] FLPMA." S.Rep. No. 413, 96th Cong., 2d Sess. 1, 310 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5070, 5254 (reviewing access rights of inholders under FLPMA and explaining need for Alaska National Interest Lands Conservation Act of 1980, 16 U.S.C. §§ 3101–3233 ("ANILCA")). However, access rights to inholdings, especially those inholdings located in wilderness areas, became more uncertain when the Secretary of Interior concluded that FLPMA "authorized denial of access across public lands subject to wilderness review." *Id.*

In order to resolve "any lingering legal questions" concerning inholders' right of access to their property, Congress passed § 3210(a) of ANILCA in 1980.[3] *See* Pub.L. No. 96–487, 94 Stat. 2374 (codified at 16 U.S.C. §§ 3101–3233 (1980)). Section 3210(a) of ANILCA guarantees to inholders a threshold "right of access to their lands subject to reasonable regulation [under FLPMA] by ... the Secretary of Agriculture in the case of national forest [lands]."[4] *Adams v. United States,* 3 F.3d 1254, 1258–59 (9th Cir.1993) (citation omitted). While ANILCA mandates that the Forest Service

provide reasonable access to all inholders, it directs inholders to "comply with rules and regulations applicable to ingress and egress to and from the National Forest System." 16 U.S.C. § 3210(a).

## II.

The current controversy results from the Forest Service's attempt to regulate Defendant's access to his inholdings pursuant to ANILCA and FLPMA. Defendant is the owner of three ranches located within the Apache National Forest in Catron County, New Mexico. The Centerfire Bog Ranch, the Double J. Ranch and the Patruff Ranch were originally patented to Defendant's predecessors in interest pursuant to the Homestead Act. Each of Defendant's ranches is completely surrounded by forest service land; consequently, Defendant must cross forest service land in order to access his property. Prior to the present controversy, Defendant had use of three separate roads, known as the Double J., Patruff, and Centerfire Bog Roads, to access his property.

In the early 1980s, the Forest Service sought to discontinue its longstanding practice of allowing Defendant free use of the three access roads. The Forest Service contacted Defendant and requested that he apply for a special use permit pursuant to ANILCA to obtain a legal right of access across the roads passing through forest service land.[5] The proposed special use permit sought to among other things (1) impose conditions which regulate the use of the roads and prevent harm to the National Forest Service lands and (2) require Defendant

---

**3.** Section 3210(a) of ANILCA applies to all National Forest System lands, not just those in Alaska. *See Montana Wilderness Ass'n v. United States,* 655 F.2d 951, 957 (9th Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982); *see also* H.R.Rep. No. 1521, 96th Cong., 2d Sess. 20 (1980) (implying that § 3210(a) applies outside of Alaska by concluding that provision in Colorado Wilderness Act pertaining to access to nonfederally owned lands was unnecessary due to § 3210(a) of ANILCA).

**4.** Section 3210(a) provides:

Notwithstanding any other provisions of law, and subject to such terms and conditions as

the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure the owner reasonable use and enjoyment thereof: Provided, that such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a).

**5.** The parties submitted to the district court a copy of the proposed permit the Forest Service presented to Defendant. We have attached a copy of the permit, ("Exhibit L"), as an appendix to this opinion.

to pay a fee for his continued use of the access roads. Defendant refused to comply with the request claiming that the terms of the proposed permit were inconsistent with his patent and common law and statutory access rights.

Following unsuccessful attempts to force Defendant to apply for a special use permit, the Forest Service initiated the instant action on May 17, 1990 in the federal district court of New Mexico, seeking an order enjoining Defendant from the use of the access roads without proper land use authorization from the Forest Service. Defendant counterclaimed contending that his patent, common law and statutory rights provided a legal right of access over the roads and that the regulations contained in the Forest Service's proposed special use permit were inconsistent with these rights. Defendant also brought a quiet title action seeking a determination of his patent and common law easement claims. *See Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir.1978) (easements are real property interests subject to quiet title actions). The district court entered summary judgment in favor of the Forest Service and enjoined Defendant's use of the disputed roads without proper land use authorization from the United States. Defendant now appeals.

We review the grant or denial of a summary judgment motion de novo applying the same legal standard used by the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.* 912 F.2d 1238, 1241 (10th Cir.1990) (citations omitted). Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991).

### III.

On appeal, the parties agree that Defendant has a right of access to his inholdings over forest service land. The source and extent of that access right, however, form the basis of the dispute. Defendant argues that rights granted pursuant to his patent or common law easements establish his right of access over the disputed roads and the terms of the proposed special use permit constitute an unreasonable regulation of these patent or common law rights. The Forest Service, on the other hand, argues that Defendant is not vested with any patent or common law rights which would establish a right of access over the disputed roads. Furthermore, the Forest Service argues the regulations contained in the proposed special use permit are reasonable.

### A.

■ Defendant has thus far refused to apply for a special use permit claiming that his patent or common law easement rights exempt him from such *procedure*. We disagree. Congress has the authority and responsibility to manage federal land. U.S. Const. art. IV, § 3, cl. 2. By statute, Congress has delegated this authority to agencies such as the Forest Service who are obligated to oversee the management of national forest lands and protect the natural resources found therein. *See Mountain States Legal Foundation v. Espy*, 833 F.Supp. 808, 819 (D.Idaho 1993). Balanced with the Forest Service's obligation to protect national forest interests are the interests of inholders seeking access to property surrounded by forest service land. Congress passed ANILCA in order to accommodate both interests by assuring access to the private inholder while authorizing the Forest Service to regulate that access through "such terms and conditions as the Secretary of Agriculture may prescribe ... to secure to the owner the reasonable use and enjoyment" of his property. 16 U.S.C. § 3210(a). The legislative history of ANILCA contemplates that access under ANILCA is subject to the FLPMA and the rules and regulations promulgated thereunder. *See* S.Rep. No. 413, 96th Cong., 2d Sess. 310 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5070, 5254.

As a means of assuring and regulating access to inholdings, the Secretary of Agriculture has promulgated regulations under ANILCA. These regulations set forth a permit system designed to document "the occupancy and use authorized on National Forest System lands or facilities and identify[ ] the landowner's rights, privileges, responsibili-

ties, and obligations." 36 C.F.R. § 251.-110(d). Under the permit system, landowners seeking access to their inholdings must apply for a special use permit from the Forest Service. *See* 36 C.F.R. § 251.112(a). Special use permits issued by the Forest Service must secure to the landowner the reasonable use and enjoyment of his property. *See* 36 C.F.R. § 251.110(c).

■ An agency must be given substantial latitude in determining how to implement a statutory mandate. *See McKinney v. Comm'r,* 732 F.2d 414, 417 (10th Cir.1983). "As long as an agency's procedures are reasonably designed to permit the agency to 'discharge [its] multitudinous duties,' a court should not interfere." *Southern Motor Carriers Rate Conference v. United States,* 773 F.2d 1561, 1571 (11th Cir.1985) (quoting *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 543–46, 98 S.Ct. 1197, 1211–13, 55 L.Ed.2d 460 (1978)). In the instant case, the Forest Service's permit procedure appears to be a reasonable method of implementing ANILCA's statutory mandate to provide access to inholders while assisting the Forest Service in the management and preservation of forest lands.

■ Furthermore, we conclude these permit procedures are not inconsistent with Defendant's asserted patent or common law rights. *See Montana Wilderness,* 496 F.Supp. 880, 889 (D.Mont.1980) (common law easement providing access to inholdings subject to regulation by FLPMA permit), *aff'd on other grounds,* 655 F.2d 951 (9th Cir. 1981); *Utah v. Andrus,* 486 F.Supp. 995, 1009 (D.Utah 1979) (common law easement subject to regulation under FLPMA). Under basic principles of property law, these rights would still be subject to regulation by the Forest Service as the owner of the servient estate. *See Restatement of Property* § 484 (1944) (servient owner may prevent uses of easement which are not reasonably required by normal development of dominant tenement); *see also Columbia Gas Transmission, Corp. v. Limited Corp.,* 951 F.2d 110, 113 (6th Cir.1991) (dominant estate holds rights correlative to rights of servient owner); *Brooks v. Tanner,* 101 N.M. 203, 207, 680 P.2d 343, 347 (1984) (burden on

servient estate cannot be increased without consent of servient owner); *Posey v. Dove,* 57 N.M. 200, 208, 257 P.2d 541, 549 (1953) (dominant estate can make no alteration in dimensions, location, or use of the easement without consent of servient owner). We therefore hold that, regardless of Defendant's patent or common law rights, he must apply for a special use permit as provided for in 36 C.F.R. § 251.112(a).

■ Although we agree with the district court that Defendant must apply for a special use permit, we believe the district court erred in declining to address Defendant's patent or common law claims. The district court concluded that "even if … easements for each of the roads [exist, the Forest Service] can still regulate these access rights pursuant to ANILCA and FLPMA." A determination of Defendant's patent or common law claims to an easement was appropriate before the district court because Defendant properly raised these claims in a quiet title action. Furthermore, a determination of Defendant's patent or common law rights will play a pivotal role during the permit process the Forest Service seeks to enforce against Defendant. Pursuant to the Forest Service's own regulations which it is required to follow, *see Bar MK Ranches v. Yuetter,* 994 F.2d 735, 738 (10th Cir.1993), the officer issuing a special use permit must ensure that the landowner "has demonstrated a lack of any existing rights … of access *available by deed or under State or common law* " prior to issuing a permit. 36 C.F.R. § 251.114(f)(1) (emphasis added). Although we leave it to the Forest Service to interpret this regulation, it appears that the Forest Service itself recognizes that any deed or common law access rights a landowner possesses may affect the terms of the permit or play a role in the decision to issue a permit. Because of the important role a determination of Defendant's patent or common law rights will play in the permit issuance process and because Defendant properly raised his patent and common law claims through a quiet title action in his counterclaim, we reverse the district court's grant of summary judgment in favor of the Forest Service as to Defendant's patent and common law claims and remand

to the district court for further proceedings regarding Defendant's claims.

### B.

■ Given the important role the existence of Defendant's patent or common law rights will play in the Forest Service's permit process, we also address the district court's order which enjoined Defendant's use of the disputed access roads until he receives proper land use authorization from the Forest Service. Under the court's order, Defendant not only must apply for a special use permit, but must also *receive* a special use permit from the Forest Service before the injunction is lifted. We review the district court's grant of an injunction for an abuse of discretion, *Prows v. Federal Bureau of Prisons,* 981 F.2d 466, 468 (10th Cir.1992), and we have authority to modify an injunction if it is overbroad, *see* 28 U.S.C. § 2106; *see also In re Packer Avenue Associates,* 884 F.2d 745, 748 (9th Cir.1989); *Wood v. Santa Barbara Chamber of Commerce,* 705 F.2d 1515, 1523 n. 7 (9th Cir.1983).

A party may be enjoined from committing certain acts without proper authorization from an authorized agency official. *See* 42 Am.Jur.2d *Injunctions* § 165 (1969). For example, in *Cablevision of Texas v. Oklahoma Western Telephone Company,* 993 F.2d 208, 210 (10th Cir.1993), Defendant began constructing a cable television system in Clayton, Oklahoma. Upon learning of Defendant's construction activity, the Plaintiffs sought and obtained a permanent injunction in district court which prevented the construction of a communications facility without a certificate of authorization from the Federal Communications Commission ("FCC") as required by 47 U.S.C. § 214. *Id.* On appeal, we noted that because the Defendant had failed to comply with the certification procedures of § 214, the district court prop-

erly enjoined the construction of Defendant's cable facility until it received proper FCC authorization. *Id.*

Unlike the statute and FCC regulations in *Cablevision,* which required a party to receive a permit prior to construction, the Forest Service's ANILCA regulations may not require a permit for road use if Defendant can demonstrate "existing rights of access available by ... common law." 36 C.F.R. § 251.114(f)(1). The district court's order enjoining use of the roads until a permit is *obtained* therefore fails to account for the role the existence of any patent or common law rights of access may play within the Forest Service's permit process. We therefore conclude the district court's injunction preventing Defendant's use of the access roads without land-use authorization was overbroad in that it enjoined Defendant's use of the roads until he actually obtained a permit. Because the Forest Service may not be able to legitimately require that Defendant actually receive a permit if Defendant possesses any patent or common law rights of access, but can legitimately require Defendant to apply for such permit, we hereby modify the injunction, enjoining Defendant from use of the access roads until such time as he *applies* for a special use permit as required by 36 C.F.R. § 251.112(a). *Cf. Weinberger v. Romero–Barcelo,* 456 U.S. 305, 315, 102 S.Ct. 1798, 1804–05, 72 L.Ed.2d 91 (1982) (compliance with statute achieved by order directing a party to apply for a permit rather than enjoining party altogether).[6]

### C.

■ Although Defendant has yet to apply for a special use permit, Defendant nevertheless challenges the terms of the proposed permit submitted to him by the Forest Service. *See* Appendix attached to this opinion. Defendant claims the terms of the proposed

---

**6.** At this point in the record, we express no opinion on the validity of Jenk's claims to access pursuant to patent, statute, or common law. Furthermore, we need not decide now whether Jenks may establish a continuing right to access during the permitting process. If the government denies Jenks access to his inholdings during the permitting process, Jenks' interim right to access may depend upon whether he can

make the showing necessary for a preliminary injunction or other interim relief. At this point in the record, there is no indication that the government would deny Jenks access to his land during the processing of his application. Thus, the issue of Jenks' possible right to access during the pendency of the application process is not now properly before us.

permit are unreasonable and deprive him of patent or common law easement rights granted to him through land patents issued to his predecessors in interest under the Homestead Act.[7] Defendant also claims the terms of the proposed permit constitute a Fifth Amendment taking of his property rights. The district court held that the terms of the proposed permit were reasonable and did not unlawfully infringe on Defendant's property rights.

Following the district court's decision, the Forest Service, in its brief to this court, maintained for the first time that the special use permit presented to Defendant, *see* Appendix, "was merely a proposal and was subject to negotiation" and that "there was no indication ... that this permit, unamended, was going to be the permit for [Defendant]." [8] While we "may not accept appellate counsel's *post hoc* rationalizations for agency action," *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962), we may consider appellate counsel's clarification of the action the agency has taken in an order because "[w]e must know what a decision means before the duty becomes ours to say whether it is right or wrong," *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 197, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (quoting *United States v. Chicago, M., St. P. & Pac. R.*, 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935)).

Because we are now informed that the proposed permit may not be applied to Defendant and is "subject to negotiation," the terms of the proposed permit are merely illustrative and any comment by this court on the terms of the proposed permit would be an advisory opinion and thus improper. *See Turner v. Chicago Housing Authority*, 969 F.2d 461, 464 (7th Cir.1992) (comment on constitutionality of lease provisions not yet enforced would be improper as advisory); *see generally Flast v. Cohen*, 392 U.S. 83, 96–97, 88 S.Ct. 1942, 1950–51, 20 L.Ed.2d 947 (1968) (federal courts may not issue advisory opinions). Furthermore, due to the Forest Service's changed position on appeal, the district court's finding that the terms of the permit were reasonable is hereby rendered moot. We therefore reverse the district court's finding regarding the reasonableness of the terms of the permit and remand to the district court with instructions to vacate that portion of its opinion.[9]

## IV.

In conclusion, we AFFIRM the district court's order as hereby MODIFIED, enjoining Defendant's use of the disputed access roads until he applies for a special use permit pursuant to ANILCA. We REVERSE the district court's finding regarding the reasonableness of the terms of the permit. We also REVERSE the district court's grant of summary judgment in favor of the Forest Service as to Defendant's patent and common law claims and REMAND to the district court for further proceedings consistent with this opinion.

---

7. Specifically, Defendant challenges terms of the proposed permit which: (1) require him to pay a fee for access; (2) make use of the easements conditional; (3) allow the Forest Service to terminate the easements; (4) allow the Forest Service to change the terms and conditions of the easements; and (5) make the transfer of the easements discretionary.

8. At oral argument, counsel for the Forest Service further indicated that the proposed permit was one merely copied from a form book. *See* Appendix.

9. Defendant also claims that his rights of access established pursuant to § 3210(a) of ANILCA and § 478 of the Organic Act have been unreasonably regulated by the Forest Service through the terms of its proposed permit. Because we do not have before us the permit the Forest Service seeks to apply against Defendant, we are precluded from commenting upon the reasonableness of the terms of the proposed permit. Therefore, we do not consider these arguments.

ROAD RIGHTS-OF-WAY GRANTS HANDBOOK

41.12 - Federal Land Policy and Management Act Private Road
Easement.  Use the format shown in exhibit 1 for a long-term
grant of a right to use and occupy National Forest System lands
for a road that is not part of the Forest Development Road
System.  The standard of the road constructed on the easement
is entirely at the discretion of the grantee, except that the
road must include all features needed to protect the National
Forest land within and adjacent·to the right-of-way.

Exhibit 1

FEDERAL LAND POLICY AND MANAGEMENT ACT
PRIVATE ROAD EASEMENT

THIS EASEMENT, dated this _____ day of _____, 19___,
from the United States of America, acting by and through the
Forest Service, Department of Agriculture, hereinafter called
Grantor, to _____ (a _____
_____ of the State of _____), hereinafter
called Grantee.

WITNESSETH:

WHEREAS, Grantee has applied for a grant of an easement under
the Act of October 21, 1976 (90 Stat. 2743; 43 U.S.C. 1761),
for a road over certain lands or assignable easements owned by
the United States in the County of _____, State of
_____, and administered by the Forest Service,
Department of Agriculture.

NOW THEREFORE, Grantor, for and in consideration of the payment
of an annual use fee paid by Grantee does hereby grant to
Grantee, subject to existing easements and valid rights, a
nonexclusive easement for use of a road, along and across a
strip of land, ·over and across the following described lands in
the County of _____, State of _____:

(The location of said easement is shown (approximately) on
exhibit _____ attached hereto.) 1/

(Said premises are more specifically described by a centerline
description contained in exhibit _____ attached hereto.) 1/
_____
1/  Omit the word or phrase in parentheses if not applicable.

*-FSH 5/87 AMEND 3-*

1522

Exhibit 1--Continued

Said easement shall be _____ feet on each side of the
centerline with such additional width as required for accommo-
dation and protection of cuts and fills.  If the road is
located substantially as described herein, the centerline of
said road as constructed is hereby deemed accepted by Grantor
and Grantee as the true centerline of the easement granted.

This grant is made subject to the following terms, provisions,
and conditions applicable to Grantee, its permittees, contrac-
tors, assignees, and successors in interest.

    A.  Grantee shall comply with applicable Federal or State
law and shall comply with State standards for public health and
safety, environmental protection, and siting, construction,
operation, and maintenance of or for rights-of-way for similar
purposes, if those standards are more stringent than applicable
Federal standards.

    B.  The rights herein conveyed do not include the right to
use the road for access to developments for short- or long-term
residential purposes, unless and until the Grantor and the
Grantee agree upon traffic control regulations, rules, and
other provisions to accommodate such use of the road.

    C.  Upon change in ownership of the land or facility served
by this road, the rights granted under this easement may be
transferred to the new owner upon written notification to the
Regional Forester.

    D.  This easement shall continue for as long as needed for
the management and harvesting of the natural resources on the
Grantee's land served by this road 2/; Provided, That the
Grantor shall review the terms and conditions of this easement
at the end of each 30-year period from the date of issuance,
and may incorporate in the easement such new terms, conditions,
and stipulations as existing or prospective conditions may
warrant.  These shall have the same force and effect in the
future as if incorporated in this grant.

    E.  All construction or reconstruction of the road shall be
in accordance with plans, specifications, and written stipula-
tions approved by the Grantor prior to beginning such construc-
tion or reconstruction.

_____

2/  See section 43.

ROAD RIGHTS-OF-WAY GRANTS HANDBOOK

Exhibit 1--Continued

F.   Grantee shall have the right to cut timber upon the easement area to the extent necessary for maintaining the road.  Timber so cut shall, unless otherwise agreed to, be cut into standard log lengths or other products as specified by the authorized officer and decked along the road for disposal by the owner of such timber.

G.   The Grantee shall maintain the right-of-way clearing by means of chemicals only after the Grantor has given specific written approval.  Application for such approval must be in writing and must specify the time, method, chemicals, and the exact portion of the right-of-way to be chemically treated.

H.   The Grantee shall provide maintenance so that there is no damage on adjacent National Forest land.  The Grantee shall construct and maintain lead-off drainage and water barriers as necessary to prevent erosion.

I.   Grantee shall pay annually in advance a sum determined by the Forest Service to be the fair market value of the use authorized by this easement.  The initial payment is set at $_____ for the remainder of the calendar year.  Payments for each subsequent calendar year shall be the amount of $_____ adjusted using the Implicit Price Deflator-Gross National Product index (IPD-GNP), or other factor selected by the Forest Service, to reflect more nearly the current fair-market value of the use.  At intervals to be determined by certain changes in the indexes used to establish the linear rights-of-way fee schedule, the fee shall be reviewed and adjusted as necessary to assure that it is commensurate with the value of the rights and privileges authorized.  Failure of the Permittee to pay the annual payment, late charges, or other fees or charges shall cause the permit to terminate.

Grantee shall pay an interest charge on any fee amount not paid by the payment due date.

Interest shall be assessed using the most current rate prescribed by the United States Department of Treasury Financial Manual (TFM-6-8020).  Interest shall accrue from the date the fee payment was due.  In addition, certain processing and handling administrative costs may be assessed in the event the account becomes delinquent and added to the amounts due.

Exhibit 1--Continued

A penalty of 6 percent per year shall be assessed on any fee amount overdue in excess of 90 days from the due date of the first billing.

Payments will be credited on the date received by the designated collection officer or deposit location. If the due date(s) for any of the above payments or fee calculation statements fall on a nonworkday, the charges shall not apply until the close of business of the next workday.

    J. This easement shall terminate in the event an easement is granted subsequently by the United States to a public road agency for operation of this road as a public highway.

    K. Grantee shall pay the United States for all injury, loss, or damage, including fire suppression costs, in accordance with existing Federal and State laws.

    L. Grantee shall indemnify the United States for any and all injury, loss, or damage, including fire suppression costs the United States may suffer as a result of claims, demands, losses, or judgments caused by the Grantee's use or occupancy under this easement.

    M. Upon termination of this easement, the Grantee shall remove within a reasonable time the structures and improvements and shall restore the site to a condition satisfactory to the Grantor, unless otherwise waived in writing. If the Grantee fails to remove the structures or improvements within a reasonable period, as determined by the Grantor, the Grantor may remove and dispose of any improvements and restore the area and all costs shall be paid by the Grantee.

If the Grantor waives the removal of the improvements and restoration of the site, all improvements shall become the property of the United States.

The foregoing notwithstanding, this easement is granted subject to the following reservations by Grantor, for itself, its permittees, contractors, and assignees:

    1. The right to cross and recross the road at any place by any reasonable means and for any purpose in such manner as will not interfere unreasonably with Grantee's use of the road.

 
ROAD RIGHTS-OF-WAY GRANTS HANDBOOK

Exhibit 1--Continued

2.  The right to all timber now or hereafter growing on the right-of-way, subject to Grantee's right to cut such timber as herein provided.

3.  The right alone to extend rights and privileges for use of the road constructed on the premises to other users, provided that nonfederal users shall bear a fair share of the current replacement cost less depreciation of the road and shall reconstruct the road as necessary to accommodate their use.

4.  The Grantor reserves the right to use or authorize the use of the road by other Federal agencies, without cost other than the performance or payment, as it may elect, for its proportionate share of maintenance costs.

5.  The Grantor retains the right to occupy and use the right-of-way, and to issue or grant rights-of-way for other land uses, for other than road purposes, upon, over, under, and through the easement area provided that the occupancy and use do not interfere unreasonably with the rights granted herein.

6.  The right to terminate this easement if the Grantor assumes jurisdiction and control of the road as a Forest Development Road and issues a replacement easement providing only for use of the road.  The replacement easement shall be in the current standard format, which provides the Grantee the right to use the road for the purposes and for the period authorized by this easement, subject to such traffic control regulations and rules as Grantor may impose reasonably upon or require of other users of the road without unreasonably reducing the rights herein granted.

The Grantor may take action to suspend, revoke, or terminate this easement under the Rules of Practice Governing Formal Adjudicatory Administrative Proceedings Instituted by the Secretary Under Various Statutes in 7 CFR 1.130-1.151.  An administrative proceeding is not required when the easement terminates on the occurrence of a fixed or agreed-upon condition, event, or time.

41.12--6

ROAD RIGHTS-OF-WAY GRANTS HANDBOOK

## Exhibit 1--Continued

IN WITNESS WHEREOF, the Grantor, by its (Deputy) Regional
Forester, Forest Service, has executed this easement pursuant
to the delegation of authority by the Secretary of Agriculture
to the Assistant Secretary for Natural Resources and Conserva-
tion, the delegation of authority by the Assistant Secretary
for Natural Resources and Conservation, to the Chief, Forest
Service, 7 CFR 2.60, and the delegation of authority by the
Chief, Forest Service, dated August 16, 1982, (47 FR 36465), on
the day and year first above written.

UNITED STATES OF AMERICA

_____
(Deputy) Regional Forester
Forest Service
Department of Agriculture

(APPROPRIATE ACKNOWLEDGEMENT)