**Raymond FITZGERALD,
et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 94–0518 PHX CAM.**

United States District Court,
D. Arizona.

May 24, 1996.

Cameron T. Chandler, Gallagher & Kennedy, Phoenix, AZ, William Perry Pendley, Steven James Lechner, Mountain States Legal Foundation, Denver, CO, John Charles Giles, Kimball & Curry P.C., Phoenix, AZ, for plaintiffs.

Sue A. Klein, U.S. Attorney's Office, Janet Napolitano, United States Attorney, Phoenix, AZ, for defendant.

## ORDER

MUECKE, District Judge.

Having considered the pleadings filed concerning the cross motions for summary judgment, the Court concludes as follows:

## INTRODUCTION

This lawsuit involves the issue of what type of access must be provided to private land surrounded by National Forest Systems land. The parties agree that plaintiffs have a right of access to their inholdings over Forest Service land. The type and extent of that access, and whether the access can be restricted or regulated form the basis of the dispute in this lawsuit.

## FACTS

The following facts are undisputed:

Plaintiffs Raymond and Nancy Fitzgerald and the Hook Cattle Company ("the Fitzgeralds") own the O'Haco Cabins Ranch, located within Coconino County, Arizona. Plaintiffs'

Statement of Facts ("PSOF"), 1. The O'Haco Cabins Ranch embraces a portion of Section 26, Township 13 North, Range 12 East, Gila & Salt River Meridian, and is described by Homestead Entry Survey ("H.E.S.") No. 458. PSOF, 2. The O'Haco Cabins Ranch is depicted in the Plat of H.E.S. No. 458. PSOF, 3.

The O'Haco Cabins Ranch is fifty-five miles from Winslow, Arizona, the nearest town. PSOF, 4. In 1893, Township 13 North, Range 12 East, Gila & Salt River Meridian, was surveyed. PSOF, 5. On October 9, 1895, the 1893 survey of Township 13 North, Range 12 East, Gila & Salt River Meridian, was approved by the U.S. Surveyor General's Office. PSOF, 6.

The Apache–Sitgreaves National Forest was originally created on August 17, 1898. Defendants' Statement of Facts ("DSOF"), 57. The authorization for the President to create and reserve lands for National Forests was originally provided on March 3, 1891. DSOF, 58.

On September 28, 1912, H.L. Taylor filed an Application for Listing No. 398, pursuant to the Act of June 11, 1906 (34 Stat. 233) on a portion of land within Section 26, Township 13 North, Range 12 East, Gila & Salt River Meridian. PSOF, 8.

On February 10, 1913, Application for Listing No. 398, was approved and was designated List No. 3–2262. PSOF, 9. On May 9, 1914, Stelzer Tillman made Homestead Entry No. 025070. PSOF, 10. On June 15–17, Homestead Entry No. 025070 was surveyed and designated H.E.S. 458. PSOF, 11. The survey field notes state "Winslow, Arizona, the nearest railroad point, post office and commercial center, is approximately 55 miles distant, 9 miles of which is rough trail, 11 miles fair wagon road and 35 miles good wagon road." PSOF, 12.

Prior to the survey of H.E.S. 458, H.E.S. 458 was cultivated and the following improvements had been made: (1) a two-room dwelling; (2) a log and dirt root cellar; (3) two pole corrals; (4) one mile of wire fence; and (5) a well. PSOF, 13. On February 19, 1919, H.E.S. 458 was approved by the U.S. Surveyor General's Office. PSOF, 14.

On April 26, 1920, the President of the United States signed Patent No. 746772 granting the O'Haco Cabins Ranch to Stelzer Tillman. PSOF, 15. The grant was made pursuant to the Act of May 20, 1862, titled "to secure Homesteads to actual Settlers on the Public domain." 12 Stat. 392–93, repealed 1976 (the Homestead Act). PSOF, 15. At the time that the United States granted H.E.S. 458 to Stelzer Tillman, H.E.S. 458 was surrounded by lands owned by either the United States or third parties. PSOF, 16.

On June 30, 1983, the Fitzgeralds purchased the O'Haco Cabins Ranch and the Pius Farms Ranch. PSOF, 19. At that time, the only way the Fitzgeralds could access the O'Haco Cabins Ranch was to cross lands owned by either the United States or third parties. PSOF, 20. There were several access routes to the O'Haco Cabins Ranch. PSOF, 21. The primary access route was FDR 56B. PSOF, 22. FDR 56B extends from FDR 56 to the O'Haco Cabins Ranch, is approximately two miles in length, and crosses parts of §§ 25, 26, and 36, Township 13 North, Range 12 East, Gila and Salt River Meridian. PSOF, 23. The location of FDR 56B has not changed since the Fitzgeralds purchased the O'Haco Cabins Ranch. PSOF, 24.

Shortly after the Fitzgeralds purchased the O'Haco Cabins Ranch and the Pius Farms Ranch, the Forest Service issued a grazing permit to the Fitzgeralds that entitles the Fitzgeralds to graze livestock on the Limestone Grazing Allotment. PSOF, 25; Fitzgerald's deposition of August 14, 1995, at 20–22. The O'Haco Cabins Ranch and the Pius Farms Ranch serve as "base property" for the Fitzgeralds' grazing permit. PSOF, 26. The Limestone Grazing Allotment encompasses a portion of the Sitgreaves National Forest.[1] PSOF, 27. The O'Haco Cabins Ranch serves as the base properties for the Limestone Grazing Allotment primarily

---

1. The Limestone Grazing Allotment is a 915 head allotment, covering approximately 65 square miles. Fitzgerald deposition, at 6. The O'Haco Cabins (35 acres) and Pius Farms (29 acres) are approximately three miles apart, but by road, five miles apart.

from May through October each year. PSOF, 28, DSOF, 28.

There is a house on the O'Haco Cabins Ranch. PSOF, 29, DSOF, 29. The house does not have electricity or a generator, but the property contains a water source. DSOF, 29. The Fitzgeralds and their employees have lived on the property at least for part of the year in some years. PSOF, 30, DSOF, 30. The Fitzgeralds and their employees also live at a trailer in a 5-mile pasture located on Forest Service land when using the southern pasture to graze. DSOF, 30. The Fitzgeralds hold the cattle near Pius Farm after the round up.

Soon after the Fitzgeralds purchased the O'Haco Cabins Ranch, the Forest Service closed additional access routes to the O'Haco Cabins Ranch; one route was closed in agreement with plaintiffs, the other route was closed to preserve the riparian habitat. PSOF, 31, DSOF, 31.

In the spring of 1986, the Forest Service requested that plaintiffs apply for a special use authorization for FDR 56B. DSOF, 32. Prior to the spring of 1986, the Forest Service never attempted to interfere with, restrict, or regulate the Fitzgeralds', or the Fitzgeralds' predecessors-in-interest's, use of FDR 56B. PSOF, 33.

In the summer of 1986, the Fitzgeralds applied for a special-use authorization permit. PSOF, 34. In late 1986, the Forest Supervisor prepared a "Special–Use Permit" for the Fitzgeralds to sign. PSOF, 35, DSOF, 35. The Fitzgeralds refused to sign the permit. PSOF, 36, DSOF, 36. On May 27, 1988, the Forest Service closed FDR 56B to motorized vehicles, effective June 1, 1988. PSOF, 37–38, DSOF, 37–38. On July 11, 1988, the Fitzgeralds timely appealed the closure order to the Regional Forester. PSOF, 39, DSOF, 39.

On August 9, 1988, instead of a special use permit, a private road easement was recommended pursuant to 43 U.S.C. § 1761, *et seq.* (FLPMA). DSOF, 40. On August 30, 1988, the Forest Supervisor requested a 30–day suspension of the appeal to prepare and submit an easement to the Fitzgeralds. DSOF, 42. On September 1, 1988, the Forest Service forwarded documents titled "Private Road Easement" to the Fitzgeralds for their signatures. PSOF, 43, DSOF, 43. The "Private Road Easement" provides that the rights conveyed therein are granted pursuant to the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1784. PSOF, 44. On September 20, 1988, the Fitzgeralds notified the Regional Forester that they would not sign the document. PSOF, 45, DSOF, 45.

On September 28, 1988, the Regional Forester instructed the Forest Supervisor to submit the record to him. PSOF, 46, DSOF, 46. On December 9, 1988, the Regional Forester upheld the closure order. PSOF, 47. On January 12, 1989, the Fitzgeralds timely appealed the Regional Forester's decision to the Chief of the Forest Service ("Chief"). PSOF, 48. On June 14, 1989, the Chief suspended the appeal to await the promulgation of regulations that were supposed to implement Section 1323(a) of the Alaska National Interest Lands Conservation act ("ANILCA"), 16 U.S.C. § 3210(a). PSOF, 49.

On June 14, 1991, the Forest Service issued the final regulations that were supposed to implement ANILCA. PSOF, 50. The ANILCA Regulations became effective on July 15, 1991, and are codified at 36 C.F.R. § 251 subpart D. PSOF, 51. On December 2, 1993, the Fitzgeralds' administrative remedies were exhausted when the Chief affirmed the Regional Forester's decision. PSOF, 52.

Currently, the O'Haco Cabins Ranch is surrounded by the United States. PSOF, 55. The Forest Supervisor and Acting Deputy Regional Forester decided to close FDR 56B. Administrative Record, Exhs. AAA, BBB, CCC. The road at issue involves approximately 2 miles of National Forest land and has an annual fee of $39.24.

### Standard of Review

Summary judgment may be granted if the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Summary judgment is proper if the nonmoving party fails to make a showing sufficient to establish the existence of an

essential element of his case on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The disputed fact(s) must be material. *Id.* Substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, the dispute must be genuine. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. In a civil case, the question is:

> whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

### DISCUSSION

Although the parties agree that the Fitzgeralds have a right of access to their land, the United States considers this to be an issue of the right to regulate access across Forest Service land. The United States is not requesting a denial of access. Instead, the United States is seeking to regulate that access. First, the Court will discuss the applicable federal laws and then address the common law issues of easements and quiet title. The Court notes that Congress has the authority and responsibility to manage federal lands. U.S. Const. Art. IV, § 3, cl. 2. Congress has chosen to delegate most of this authority to federal agencies.

### I.

#### A. *The Homestead Act of 1862*

■ The Homestead Act granted 160 acres of land to individuals who agreed to live on and make improvements to the land for five years. Act of May 20, 1862, ch. 75, 12 Stat. 392, 43 U.S.C. §§ 161–284 (repealed 1976). The Act essentially set up a system whereby citizens could acquire unappropriated public lands. After five years on the land, the citizens could become owners in fee through the issuance of patents. The Act did not discuss access across the lands, but it was presumed that an implied license to use public lands would provide settlers with access to their property. *United States v. Jenks*, 22 F.3d 1513, 1515 (10th Cir.1994). The O'Haco Cabins property was not patented until 1920. However, the unrestricted access to inholdings was affected by later laws to protect the nation's natural resources.

#### B. *The Forest Reserve Act*

In 1891, a law was enacted allowing the President to reserve forest land from the public domain. Act of March 3, 1891, Chapter 561, § 24, 26 Stat. 1103, 16 U.S.C. § 471 (repealed 1976) (the "Forest Reserve Act"). On February 22, 1897, President Cleveland issued, pursuant to the Forest Reserve Act, proclamations that placed twenty million acres of federal lands in forest reserves.

#### C. *The Forest Service Organic Administration Act of 1897*

■ Also in 1897, Congress passed the Organic Administration Act of 1897 ("the Organic Act") giving the Secretary of Agriculture the authority to make rules and regulations for the protection of the national forests. 16 U.S.C. §§ 473–482, 551. The Organic Act protected the existing rights prior to the reservation of the forest. *Montana Wilderness Assoc. v. U.S. Forest Service*, 496 F.Supp. 880, 888 (D.Mont.1980), *aff'd on other grounds*, 655 F.2d 951 (9th Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). The Organic Act preserved the right of access over Forest Service lands to "actual settlers" re-

siding within the boundaries of the National Forest.

16 U.S.C. § 478 states, in part:

Nothing [in the Organic Act] shall be construed as prohibiting the egress or ingress of actual settlers residing within the boundaries of national forests, or from crossing the same to and from their property or homes; and such wagon roads and other improvements may be constructed thereon as may be necessary to reach their homes and to utilize their property under such rules and regulations as may be prescribed by the Secretary of Agriculture. Nor shall anything [in the Organic Act] prohibit any person from entering upon such national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof: Provided, That such person comply with the rules and regulations covering such national forests.

## D. *The Black Mesa Forest Reserve*

On August 17, 1898, President McKinley issued a proclamation reserving public land for the Black Mesa Forest Reserve, which later became the Sitgreaves National Forest. Section 26, Township 13 North, Range 12 East, Gila and Salt River Base and Meridian, of which the O'Haco Cabins property is a part, was reserved by the 1898 proclamation.

## E. *Federal Land Policy and Management Act ("FLPMA")*

In 1976, Congress passed FLPMA, which, in part, allowed the Secretary of Agriculture the authority to grant rights-of-way for roads over lands administered by the Forest Service. 43 U.S.C. § 1701–1784 (1976). Among other matters, FLPMA repealed over thirty statutes granting rights-of-way across federal lands and vested the Secretaries of Agriculture and Interior with authority "to grant, issue, or renew rights of way over [Forest Service and public lands] for ... roads, trails...." 43 U.S.C. § 1761(a).

2. ANILCA applies to all National Forest System lands. *Montana Wilderness Ass'n,* 655 F.2d at

FLPMA also repealed Revised Statute 2477, which had granted "the right-of-way for the construction of highways over public lands, not reserved for public use...." By repealing R.S. 2477, FLPMA preserved any rights of way that had existed prior to the date of the enactment. 43 U.S.C. § 1769(a). To establish an R.S. 2477 easement, plaintiffs must show that the road in question was built before the surrounding land was reserved for a National Forest. *Adams v. U.S.,* 3 F.3d 1254, 1257 (9th Cir. 1993). Any doubt must be resolved in favor of the government. *U.S. v. Gates of the Mountains Lakeshore Homes, Inc.,* 732 F.2d 1411, 1413 (9th Cir.1984). Moreover, an easement under R.S. 2477 is still subject to reasonable Forest Service regulations. *U.S. v. Vogler,* 859 F.2d 638, 642 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989).

## F. *The Alaska National Interest Land Conservation Act (ANILCA)*

To further clarify, or complicate, matters, in 1980, Congress passed ANILCA, which states, in part at 16 U.S.C. § 3210 [2]:

Notwithstanding any other provisions of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: Provided, that such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

Thus, plaintiffs have a right of access to their property across national forest system lands for the "reasonable use and enjoyment" of the property. *Adams v. United States,* 3 F.3d at 1259. However, under ANILCA, the Forest Service has the right to regulate that access.

957.

### G. Federal Regulations

36 C.F.R. part 251, Subpart D provides regulations for access to nonfederal lands. The regulations provide for a special use permit system whereby private landowners seeking access to their inholdings apply for those permits from the Forest Service. See 36 C.F.R. § 251.112(a). Those permits must secure to the landowner the reasonable use and enjoyment of the property. 36 C.F.R. § 251.110(c).

However, under 36 C.F.R. § 251.114(f),

The authorizing officer, prior to issuing any access authorization, must also ensure that:

(1) The landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law.

36 C.F.R. § 251.114(f).

## II.

### A. Whether Title Must Be Quieted In Favor of the Fitzgeralds Due to A Common Law Easement

The Fitzgeralds argue that a common law right of an easement by necessity, an implied easement or an express easement exists. If so, then those rights would not be preempted by the applicable statutes and the Forest Service regulations would be improper. The Fitzgeralds further argue that a special use permit or an easement is an unreasonable regulation of those patent and common law rights. Therefore, the Fitzgeralds argue that title must be quieted in their favor for an easement of access to the O'Haco Cabins Ranch.

### 1. Easement by Necessity

■ According to the Fitzgeralds, an easement by necessity exists to provide them with a right of access to the O'Haco Cabins Ranch. The Fitzgeralds argue that an easement by necessity has been created here because the grantor, the United States, conveyed a parcel of land surrounded by land owned by the grantor or third parties. See, Montana Wilderness Ass'n v. U.S. Forest Service, 496 F.Supp. 880, 882 (D.Mont.1980),

aff'd on other grounds, 655 F.2d 951 (9th Cir.1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). The doctrine of easement by necessity applies against the United States. United States v. Dunn, 478 F.2d 443 (9th Cir.1973).

■ An easement by necessity is created: (1) if the title to the two parcels in question at some time has been owned by one party (unity of title); (2) the unity of title was severed by a conveyance of one of the parcels; (3) at the time of severance, the easement must be reasonably necessary in order for the owner of the severed parcel to put the severed land to beneficial use and enjoyment.

■ The United States at one time simultaneously owned the O'Haco Cabins Ranch and at least some of the surrounding lands, the unity of title was severed in 1920, and at that time, Tillman accessed the O'Haco Cabins Ranch by crossing lands owned by either the United States or third parties. The undisputed facts state that at the time Tillman acquired H.E.S. 458, Tillman accessed the property either by crossing lands owned by the United States or third parties. There is no indication in the record that this particular road (56B) existed, or even if it existed, that it was the only access route over Forest Service Land. The first mention of any access to the property was the H.E.S. Survey and notes of June 17, 1916, which make general reference to a rough trail and a wagon road, but do not indicate that the trail and road are the same as FDR 56B. Indeed, when the Fitzgeralds purchased the property there were several access roads to the property, and later, the northern and southern access roads were closed. There is no indication in the record that the Fitzgeralds are entirely unable to access or use the O'Haco Cabins Ranch and Pius Farms. Therefore, an easement of necessity on the road at issue is not reasonably necessary to access the parcel for beneficial use and enjoyment. In short, a common law easement of necessity does not exist. See Adams v. United States, 3 F.3d 1254 (9th Cir.1993) (Where the United States owns the servient estate for the benefit of the public, there are additional concerns focused on preservation of the land. Com-

mon law rules are applicable only when not preempted by statute).

## 2. *Implied Easement*

 An implied easement can exist if Congress intended to grant an easement for access when it granted title to the O'Haco Cabins Ranch. *State of Utah v. Andrus*, 486 F.Supp. 995, 1002 (D.C.Utah 1979). Although Congress clearly intended to allow settlers access to their land at the time Tillman acquired the land, this does not assume Congress intended to grant an implied easement. The general rule is that nothing passes by implication in a public grant. *Albrecht v. U.S.*, 831 F.2d 196, 198 (10th Cir. 1987). In short, there is no implied easement.

## 3. *An Express Easement*

 Contrary to the Fitzgerald's assertions, no express easement was granted in the patent for the property.

The patent to the O'Haco Cabins Ranch provides:

NOW KNOW YE, That there is, therefore, granted by the UNITED STATES unto the said [grantee] the tract of Land above described: TO HAVE AND TO HOLD the said tract of Land with the appurtenances thereof unto the said [grantee] and to the heirs and assigns of the said [grantee] forever. . . .

Based on the definition of appurtenance, plaintiffs argue that the appurtenance means an easement for access to the land. The only appurtenance existing at the time of the patent in 1920 was a trail. The record provides no evidence that the trail is the same road as FDR 56B. Only appurtenances existing at the time can be transferred. The Court cannot construe implied terms in the patent.

Thus, the Fitzgerald's rights are limited to those expressly provided in the acts of Congress. Congress provided the rights of access in the Organic Act, ANILCA and FLPMA. Any other implied rights do not exist.

**3.** With the existence of a statutory right of access, no necessity exists for a common law ease-

## III.

 Because no deed, patent or common law rights have been established, the Court turns to the Fitzgeralds' statutory rights of access. The statutory right of access under the applicable law and regulations provides for a special-use authorization including a private easement for access to inholdings [3].

Where the United States owns the servient estate for the benefit of the public, there are additional concerns focused on preservation of the land. Common law rules are applicable only when not preempted by statute.

*Adams*, 3 F.3d at 1258.

At the time the patent was issued for the O'Haco Cabins site, Congress, pursuant to the Organic Act, had already granted the patentee, Tillman, a statutory right of access. The Fitzgeralds argue that the road at issue was in existence providing access to the actual settlers of the property prior to the patent in 1920. This is not substantiated by the record. Neither the GLO township subdivision survey plat and notes dated October 9, 1895 nor the HES 458 plat dated November 9, 1918 show such an existing road, FDR 56B, on the to-be patented land or on the National Forest land.

The Fitzgeralds argue that the first clause of the first sentence of 16 U.S.C. § 478 of the Organic Act grants a statutory right of access to "actual settlers." Based on a review of the congressional history involved in passing the statute, the Fitzgeralds argue that Congress intended to grant all owners of lands patented under the homestead laws a statutory right of access, and did not intend to restrict the meaning to an "actual settler" and not the persons to whom the land was transferred.

Although the Organic Act did provide access to inholdings for actual settlers, the Fitzgeralds are not the actual settlers. The statute did protect the rights existing prior to the reservation of the forest. Under the facts of this lawsuit, neither the O'Haco Cabins property nor FDR 56B existed prior to

ment. *Montana Wilderness*, 655 F.2d at 957–58, n. 13.

the reservation of the forest so there are no prior rights.

■ Moreover, the clear language of the statute states that access across National Forest land to reach inholdings or for other purposes shall not be prohibited subject to certain regulations. "Egress or ingress" and "crossing" National Forest land or constructing "wagon roads" shall not be interfered with "*under such rules and regulations as may be prescribed by the Secretary of Agriculture.*" The Act also states that "entering upon such national forests for all proper and lawful purposes," shall not be prohibited "*Provided, That such person comply with the rules and regulations covering such national forests.*" Therefore, under § 478 and § 551 of the Organic Act, it is clear that the Forest Service has regulatory authority.

Neither have the Fitzgeralds established that FDR 56B is/was a R.S. 2477 Right-of-Way. To perfect an R.S. 2477 claim, one requirement is that the offer made by the law must be accepted by construction and use and the acceptance must be made while the lands were unreserved from the public domain for National Forest purposes. As stated above, the plats and surveys did not show such an existing road·prior to the reservation of the land from the public domain for National Forest Service purposes. The record indicates that the road in question was developed after the reservation of the public land for the Black Mesa Forest Reserve, which later became the Sitgreaves National Forest, of which the O'Haco Cabins property is a part. Therefore, the road is not the subject of prior access rights pursuant to R.S. 2477.

■ Finally, it is clear that the Fitzgeralds also have the statutory right of access under ANILCA, but that also is subject to regulations. *See Montana Wilderness Assoc. v. United States,* 655 F.2d at 957–58, n. 13. Thus, under the Organic Act, FLPMA and ANILCA, the Fitzgeralds clearly have access to their inholdings. However, as set forth in statute and interpreted by the Ninth Circuit and other courts, that access is subject to reasonable regulations. Those regulations include procedures for a special use authorization. Those procedures are not inconsistent with the Fitzgerald's right of access to the inholdings. *United States v. Jenks,* 22 F.3d at 1517 [4].

The Fitzgeralds also argue that under 36 C.F.R. § 251.114(f), the Forest Service cannot issue a special-use authorization unless the landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law. There is no indication in the record of a deed providing a right to the Fitzgeralds on the road at issue. As set forth above, under the undisputed facts and law of this lawsuit, there is no state or common law easement. See *Adams,* 3 F.3d at 1258 (common law rules are applicable only when not preempted by statute). With a lack of a deed or rights under the common law, the Fitzgeralds are subject to the Forest Service regulations, including the necessity for a special-use authorization.

## IV.

### *Whether the Chief's Decision was Arbitrary or Capricious*

Plaintiffs additionally request that the chief's decision be held unlawful and set aside for the following reasons: (1) the restrictions in the "Private Road Easement" deprive the Fitzgeralds of their statutory right of access under ANILCA and 16 U.S.C. § 478; (2) the issuance of the Private Road Easement violates Forest Service regulations; and (3) the restrictions in the "Private Road Easement" violates the savings provisions in FLPMA.

Under the Administrative Procedure Act ("APA") [5], this Court reviews the Chief's decision under the arbitrary and capricious standard. 5 U.S.C. § 706(2)(A), (D). This Court's review is not to reweigh the evidence considered by the agency, but rather to de-

---

4. Indeed, in *Jenks,* 22 F.3d at 1517, the Tenth Circuit stated:
 We therefore hold that, regardless of Defendant's patent or common law rights, he must apply for a special use permit as provided for in 36 C.F.R. § 251.112(a).

5. 5 U.S.C. § 551 *et seq.*

termine whether the agency acted within its discretion. *Hopi Tribe v. Navajo Tribe v. United States,* 46 F.3d 908, 914 (9th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 337, 133 L.Ed.2d 236 (1995). Plaintiffs argue that because the private road easement does not recognize the Fitzgerald's statutory right of access under ANILCA, and contains numerous restrictions [6], it is therefore, arbitrary, capricious, and an abuse of discretion. Additionally, the Fitzgeralds argue that the requirement that they pay annually in advance a sum of $39.24 for the easement is an abuse of discretion.

█ Nothing in the applications of the regulations and the necessity for a special use authorization prohibits access or places any unreasonable restriction on the Fitzgeralds. Although in the discretion of the Forest Service motorized use of FDR 56B has been limited due to lack of compliance with applicable rules and regulations, there is no indication that the Fitzgeralds's ranching operation has been interrupted.

Pursuant to 36 C.F.R. § 251.114(b), inholders must pay an appropriate fee for the authorized use of National Forest System lands. The "appropriate fee" is defined as a "rental fee." 36 C.F.R. § 251.57. Plaintiffs argue that such a fee is unlawful because it is not authorized under ANILCA. As stated previously, the Organic Act, FLPMA and ANILCA provide for reasonable regulations. The Court finds absolutely no merit to the argument that the appropriate fee of $34 is unreasonable. It is clearly not burdensome and there is no indication that it is beyond the Fitzgeralds' ability to pay.

The Fitzgeralds also argue that in order to use the property for residential purposes they must agree with the Forest Service to traffic control regulations and rules which interfere with their reasonable use as a residence of private property and is without authority. Nothing in the language of the easement limits how the Fitzgeralds can use their land or limits the transfer of ownership. There is no requirement that the Forest Service approve any transfer of ownership. The Fitzgeralds merely need to inform the Forest Service of a transfer of ownership.

The Court concludes that the imposition of the regulations in the form of the procedures required for a special-use authorization is reasonable and does not unlawfully infringe on the Fitzgeralds' rights. After a review of the Chief's decision, the record, the relevant law and regulations, the Court finds no basis for finding the Chief's decision to be arbitrary and capricious. The Fitzgeralds have the statutory right of access subject to reasonable regulations for the protection of public lands. The requirement of a special-use authorization is reasonable and the Forest Service has exercised its proper authority in regulating the access to the Fitzgeralds' property.

### CONCLUSION

This Court has conducted a thorough review of the arguments and evidence presented in this matter. The parties are in agreement that plaintiffs are entitled to a right of access to their land. Plaintiffs do not have an easement by necessity, implied easement or express easement under common law. Rather, plaintiffs are entitled to the right of access subject to regulations governing National Forest Land. The Court concludes that a statutory right of access exists pursuant to the Organic Act, FLPMA and ANILCA subject to the associated reasonable regulations. Finally, the Chief's decision is affirmed. The Fitzgeralds are required to execute a special use authorization in accordance with the terms of the Forest Service in order to open FDR 56B to motorized vehicles.

**6.** The restrictions plaintiffs object to are: (1) requiring the Fitzgeralds to pay an annual rental fee to use FDR 56B; (2) denying the Fitzgeralds the use of FDR 56B if they use the O'Haco Cabins Ranch for residential purposes; (3) allowing the Forest Service to only provide the Fitzgeralds with access until December 31, 1996; (4) allowing the Forest Service to only provide the Fitzgeralds with access for 10-year intervals; (5) denying the Fitzgeralds access unless they accept a special-use authorization in which the Forest Service reserves the right to reissue a new special-use authorization with new terms and conditions; and (6) reserves to the Forest Service the right to "suspend, revoke or terminate" the Fitzgeralds' access to the O'Haco Cabins Ranch.

Accordingly, IT IS ORDERED THAT:

(1) Plaintiffs' motion for summary judgment (Doc. # 24) IS DENIED.

(2) Defendant's motion for summary judgment (Doc. # 34) IS GRANTED.

(3) The Clerk of the Court shall terminate this matter.